THE CENTRAL TRUST COMPANY, Appellant, v. THE GATE CITY ELECTRIC STREET-RAILWAY COMPANY, *et al.*, Defendants, and THE AMERICAN LOAN AND TRUST COMPANY, *et al.*, Interveners.

**Sale Subject to Confirmation.** A bidder for land at a foreclosure sale under a mortgage, which sale is to be made without redemption, has no standing, before the confirmation of the sale, to object to a resale on the ground of the inadequacy of the bid and failure to give proper notice. The rule of execution sales does not apply.

**SAME.** A resale of land under a mortgage foreclosure will be ordered where the price bid at the first sale was only a third of its value, a resale would result in a much larger bid, the persons interested in the sale were not given proper notice, objection was made before the sale was confirmed, and no one contests the application for resale except the original purchaser.

*Appeal from Keokuk Superior Court.*—HON. H. BANK, JR., Judge.

THURSDAY, JANUARY 23, 1896.

Action to foreclose a mortgage securing certain bonds. There was a decree for plaintiff, and a sale of the property. From an order of the court refusing to set aside the sale and grant another, the plaintiff and interveners appealed.—*Reversed.*

*James C. Davis* for appellant.

*J. F. Smith* for appellees.

Granger, J.—The defendant Gate City Electric Street-Railway Company issued its bonds and secured the same by mortgage on its plant, and in this suit the plaintiff obtained a judgment thereon for eighty-five thousand dollars, and a decree directing a sale of the plant. The plant consists of some real estate, a

power house, tracks laid on the streets, overhead construction, such as poles and wires, cars and other movable property, and the company's franchise. Parties other than the street-railway company were made defendants, and others intervened. The court determined that there were preferred claims to the amount of ten thousand five hundred and forty-eight dollars to be first paid from the proceeds of the sale. The following is a part of the judgment entry: "The court further finds that the property described in said mortgage or deed of trust, taken as a whole, constitutes the plant of the said Gate City Electric Street-Railway Company; that said property, as described in said deed of trust or mortgage, constitutes the plant of the Gate City Electric Street-Railway Company, which is operated and used as a street railway; that, owing to the character of the property, with its appurtenances and franchises, same would be greatly depreciated in value, and its value destroyed, unless same should be sold as an entirety. The court therefore finds that it is of the character of property that should be sold as one entire plant; that such sale should be without redemption, statutory or otherwise; and in the sale that is hereinafter ordered such sale is to be of the entire property and plant of said defendant company, as described in said mortgage, and such sale is to be without the right of redemption, statutory or otherwise." It appears that the conditions of the decree as to the manner of the sale were by consent, and that the court had jurisdiction to enter the same, and the judgment is not now questioned. By consent the sale was to be made by a commissioner on four weeks' notice by publication in certain papers in Keokuk. The notice was given, fixing the twenty-eighth day of April, 1894, as the day of sale, and on that day the sale was made to one J. C. Hubinger for the sum of ten thousand dollars. Some three days prior to the sale

the plaintiff company applied to the court for a postponement because the bondholders had not had notice of the sale. This application was overruled. The following is a provision of the sale as fixed by the notice: "Said sale will be subject to the approval of said superior court, and, in case said court shall not approve such bid as shall be made, the bidder will acquire no rights at such sale." Upon the filing of the report of the commissioner, the plaintiff, the defendant street-car company, all of the bondholders, and some others, including interveners, filed exceptions to the report or objections to its approval, for the reason that the amount bid was grossly inadequate, and that the sale was without notice to the parties interested, and who would have bid a larger amount. These objections were overruled and the report of the commissioner confirmed. From this order and the refusal to postpone the sale, the appeal is taken. The showing against the approval of the report is remarkably strong. The American Loan & Trust Company, one of the objectors, and which asks for a resale, is the holder of some fifty-three thousand dollars of the bonds in question. It appears that it had no definite notice of the day fixed for the sale until the twenty-sixth day of April, when it conferred with its attorney in Boston, Mass., and was advised that postponements of such sales were usually granted on application of the complainant; that in pursuance of that advice an application for a postponement was made, and overruled, and that it then had no time to confer with bondholders, or to arrange for the purchase of the property. As an evidence of its good faith that the property can be sold for more than the present bid, it offers to deposit two thousand dollars that, on a resale being ordered, it will guaranty that

the amount bid shall be in excess of the amount neces-
sary to pay off all claims allowed as paramount to the
mortgage debt.   Other affidavits establish the fact
beyond controversy that the bondholders other than
the plaintiff did not have actual notice of the sale, and
we think it apparent that, with such notice for a rea-
sonable time, the property would have been sold for
more than the amount bid.   No one contests the appli-
cation for a resale except Hubinger.   In this respect
the case is somewhat peculiar.   He is not a creditor,
nor has he any interest except such as arises from his
bid.   It should be borne in mind that the only
authority possessed by the commissioner was to
receive and report the highest and best bid for the
consideration and action of the court.   Hub-
inger's situation is such that his right to resist,
or even question, the application for a resale is
questionable.   He stands as one who has made an offer
and is awaiting an acceptance.   It is not as in case of
the sale of property on execution.   Mr. Freeman, in
his work on Executions, says (section 311): "It must
be remembered that there is a vast difference between
execution sales and those made under decrees of
chancery or probate courts in respect to the rights of
the purchaser and the power of the courts.   In sales
made under decrees, and which may, therefore,
properly be called 'judicial sales,' when the proceed-
ings are reported to the court, the purchaser is simply
a preferred bidder.   The court is not bound to accept
the bid, and may, in its discretion, refuse to confirm
the sale for many reasons which would have no appli-
cation where the purchase was made under execution."
In Rorer on Judicial Sales (section 106), treating of the
confirmation of sales, it is said: "Until confirmed by
the court the sale confers no rights.   Until then it is
a sale only in a popular, and not in a judicial or legal
sense.   The chancellor has a broad discretion in the

approval or disapproval of such sales. 'The accepted bidder,' says the supreme court of Kansas, 'acquires no rights, as in case of a purchaser under execution,' to have his purchase completed, but is merely a preferred purchaser until confirmation by the court as agreed to by its ministerial agent. In the exercise of this discretion a proper regard is had to the interest of the parties and the stability of judicial sales." In *Hay's Appeal*, 51 Pa. St. 58, which was a sale of land in a proceeding for a partition, it was said: "Heirs to a decedent, when parties to a proceeding for partition in the orphans' court, stand in no relation of trust or confidence to the bidders at the orphans' court sale; and even the highest bidder, whose bid has been returned to the court as the best offered, has acquired no right which debars the heirs or their counsel from endeavoring to have his bid rejected, and a resale ordered. It is their right to have as much obtained for the property as can be, and until a sale has been made and confirmed they may seek for purchasers who are willing to give more than was offered at the public auction. His bid, though the highest, was but an offer to purchase, subject to the approval or disapproval of the court; and in approving sales made in partition it is the duty of the court to regard primarily the interest of the heirs." This language is significantly applicable to this case. Nearly all the parties affected by the decree and order of sale ask a resale, and none object to it. The case is made to turn squarely on the rights of the bidder, and we nowhere find an authority that gives him a favorable, if even any, standing in court for that purpose. His reliance, by way of authority, is largely upon cases of sales on execution, where a different rule applies under universal authority. He also cites such cases as *White v. Wilson*, 14 Ves. 151, and *Mining Co. v. Mason*, 145 U. S. 349 (12 Sup. Ct. Rep. 887), where the proceedings

were to open sales after confirmation. It needs no argument to show that a different case is then presented, for, by the confirmation, legal rights are obtained. It is the acceptance that completes the sale. Considerable space is devoted in argument to the rule that sales will not be set aside for inadequacy of price unless the inadequacy is so great as to shock the conscience. That rule does not obtain in this class of cases. Appellee, in support of the rule, refers us to *Graffam v. Burgess*, 117 U. S. 180 (6 Sup. Ct. Rep. 686), where the rule is stated approvingly. We have examined the case, and find that it is one for a bill to redeem from a sale of real estate on execution.

The conclusion that a resale should be ordered is supported by the fact that there is neither appraisement nor redemption in this case. This property cost some sixty thousand dollars or upwards, and the showing preponderates that it is now of three times the value of the present bid, or more. If the parties could redeem, there would be an opportunity to protect their interests, to some extent at least; but as the order now stands the sale is final, and for, confessedly, too small a sum. Even Hubinger offers, rather than submit to a resale, to pay five hundred and forty-eight dollars more than his bid; that being the amount necessary to pay the preferred claims as found by the court. The record satisfies us that, if a resale had been ordered, an advance of from fifty to one hundred per cent. on the present bid would have been the result. There is scarcely room to doubt this. The justice of such a result in behalf of creditors is manifest, and no one can suffer prejudice by it. We think, in refusing the order for a resale, the court exceeded the discretion reposed in it, and its order is *reversed*.