WILLIAM O. SMITH, TRUSTEE, *v.* THE PACIFIC
    HEIGHTS RAILWAY COMPANY, LIMITED, HO-
    NOLULU RAPID TRANSIT & LAND COMPANY,
    LIMITED, C. G. BALLENTYNE AND C. S. DESKY.

APPEALS FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED OCTOBER 3, 4, 1905.        DECIDED OCTOBER 30, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

JUDICIAL SALES—*setting aside for inadequacy of price.*

A judicial sale may be set aside before confirmation for such
gross inadequacy of price as shocks the conscience or raises a pre-
sumption of unfairness, but not for mere inadequacy unless accom-
panied by other circumstances such as fraud, accident, mistake,
etc. Whether such a sale should be set aside or confirmed is largely
a matter of sound judicial discretion and a decision by the trial
judge in a case of this nature should not be reversed unless clearly
erroneous.

OPINION OF THE COURT BY FREAR, C.J.

This is an appeal from an order setting aside a sale and
directing a new sale in foreclosure proceedings.

The suit was brought by the trustee for the bondholders of
the Pacific Heights Railway Company, most of the stock of
which was owned by the defendant Desky. It is claimed that
the property cost $78,000 exclusive of the right of way only
four years before. It was bonded for $50,000. A decree of
foreclosure was entered and a sale ordered to be made through
a commissioner appointed for the purpose. The property, con-
sisting of lands, right of way, cars, electrical equipment, power
house, rails, etc., was sold as a whole for $1100, excepting a cer-

tain cable which was not sold and a steam condenser which was sold separately for $100. The commisioner reported with a recommendation that the sale be not confirmed owing to inadequacy of price. The circuit judge, after taking much testimony, confirmed the sale of the steam condenser but disaffirmed the sale of the rest of the property and ordered a new sale. He expressed the opinion that a judicial sale before confirmation, unlike an execution sale which requires no confirmation or a judicial sale after confirmation, could be set aside in the discretion of the court for mere inadequacy of price and, indeed, that it was the duty of the court to order a resale if it appeared that the price obtained was inadequate to such an extent that upon a resale a price could be obtained sufficiently greater to more than cover the expenses of the new sale. He found however that in this case the price bid was grossly inadequate, that an amount vastly in excess of such price, exclusive of the expenses of the new sale, could be obtained upon a resale, and that a greater price could be obtained for the property if sold in parcels than if sold as a whole, and ordered a resale in parcels, from which order the purchaser, the defendant Ballentyne, and the defendant Honolulu Rapid Transit & Land Company, which claims under him, appeal.

The principal question is one of law—as to the rule by which a court should be governed in determining whether a judicial sale should be confirmed or set aside, and more particularly what weight should be given to inadequacy of price when relied on as a ground for setting aside a sale. The appellants contend that a sale, whether judicial or nonjudicial, cannot be set aside, even before confirmation, upon the ground of inadequacy of price, however gross that may be, but that inadequacy if relied on must, in order to justify a resale, be accompanied by other circumstances such as fraud, accident, mistake, etc. The appellees contend that judicial sales before confirmation, unlike such sales after confirmation or nonjudicial sales which do not require confirmation, may be set aside as a matter of sound discretion for mere inadequacy of price, even though the inade-

quacy is not gross and even though it is unaccompanied by such other circumstances. In our opinion each of these is an extreme view. The rule best sustained by both reason and authority, as it seems to us, is that, although mere inadequacy is insufficient unless accompanied by other circumstances, inadequacy so gross as to shock the conscience or imply unfairness in the sale is sufficient for setting aside a judicial sale before confirmation. If the inadequacy is not gross, it should be accompanied by other circumstances, and of course other circumstances alone may be sufficient.

There is, no doubt, as contended by the appellees, a distinction between strictly judicial sales, such as sales in partition, guardianship, administration, receivership, foreclosure, admiralty, etc., proceedings on the one hand, and strictly legal sales, whether founded upon judgments or decrees, as in the case of ordinary executions, or on contract, as in the case of foreclosure under a power of sale, on the other hand. There is perhaps also a third and intermediate class of sales under special statutory provisions in which this distinction is more or less obliterated. Judicial sales are in theory made by the court itself, though acting through an officer appointed for the purpose, who reports his doings to the court, and are not complete until confirmed by the court. Nonjudicial sales are usually made by a public officer acting ministerially under statutory, not judicial, authority or by a person acting under contract authority and are complete as soon as made. They require no confirmation. There are other distinctions between these classes of sales that need not be referred to at this time. It may at first impression seem to follow from the distinction mentioned that the confirmation or setting aside of a judicial sale is a matter purely within the discretion of the court and that such sale might properly be disaffirmed for mere inadequacy of price even though slight,—and discretion almost as wide as that was exercised in early English practice and is exercised still in at least one American state, but, as a result of the pernicious consequences of that practice shown by experience, that is not the rule now either in England,

where it was long ago disapproved judicially and has since been changed by statute, or generally in the United States, where it has been changed by judicial decisions. This change by judicial decisions in America has not, however, gone generally to the extent contended for by the appellants of requiring that inadequacy even though so gross as to shock the conscience should be accompanied by other circumstances in order to justify setting aside a judicial sale before confirmation, though it cannot be denied that the change has gone to that extent in some states.

The law upon this subject has been presented by counsel at great length but it will not be of any advantage to review the numerous cases cited. Counsel on each side endeavor to show that the decisions relied upon by counsel on the other side are some of them inapplicable and others erroneous. They also quote different passages from the same authors in support of their respective positions. The inadvisability of discussing extensively the cases and text books cited may be shown by a single illustration, which will at the same time throw some light upon the state of the law upon this subject. In *Graffam v. Burgess,* 117 U. S. 180, the Supreme Court of the United States, referring to strictly judicial sales before confirmation, after stating the early English rule that biddings would be opened upon a mere offer to advance the price ten per centum and Lord Eldon's expressed dissatisfaction with that practice and the change of the rule in England by statute, said: "In this country Lord Eldon's views were adopted at an early day by the courts, and the rule has become almost universal, that a sale will not be set aside for inadequacy of price, unless the inadequacy be so great as to shock the conscience, or unless there be additional circumstances against its fairness; being very much the rule that always prevailed in England as to setting aside sales after the master's report had been confirmed," and, after citing in support of that statement a list of cases covering half a page, added: "From the cases here cited we may draw the general conclusion that, if the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy,

the purchaser has been guilty of any unfairness, or has taken any undue advantage, or if the owner of the property, or party interested in it, has been for any other reason, misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold." The appellants contend that the conclusion thus announced is too liberal and in opposition to it cite Freeman (2 Exec. 3d Ed. Sec. 304i) who, after quoting it, states that there is no dissent from that part of it which makes great inadequacy of price accompanied by other circumstances sufficient, but in regard to the conclusion that inadequacy alone, though so gross as to shock the conscience, is sufficient, says: "We think the decided weight of authority in the United States does not sustain this conclusion, and that, on the contrary, it asserts that, where there is no irregularity or unfairness, or, in other words, nothing but inadequacy, urged as a ground for refusing confirmation, it must fall, though the inadequacy be very clearly established and be so great that it may well be characterized as gross." The cases cited by the author do not bear him out. The appellees, on the other hand, contend that the conclusion in the *Graffam* case is too narrow and cite *Trust Co. v. Street Ry. Co.*, 96 Ia. 646, in which the supreme court of Iowa rejected that conclusion on the ground that it was a mere dictum inasmuch as the sale in that (the *Graffam*) case was an execution and not a judicial sale, and held that mere inadequacy, though not so great as to shock the conscience, was sufficient for setting aside a judicial sale, and in support of that view quoted from section 311 of Freeman, where, after pointing out the "vast difference between execution sales and those made under decrees of chancery or probate courts in respect to the rights of the purchaser and the power of the courts," the author says that in sales "made under decrees, and which may, therefore, properly be called 'judicial sales,' when the proceedings are reported to the court, a purchaser is simply a preferred bidder. The court is not bound to accept the bid, and may, in its discretion, refuse to confirm the sale for many reasons which would have no application where

the purchase was made under execution." The appellants in reply cite another portion of section 304i of Freeman in which the author, after stating that some American courts follow the early English rule and others follow the rule that gross inadequacy alone is sufficient, says: "From this statement we except the decisions of the Supreme Court of Iowa. It maintains that, in the case of a judicial sale, when no right of redemption exists, the sale must be approved by the court, and that such approval may properly be withheld solely on the ground of inadequacy of price," apparently meaning that the Iowa court stands alone in holding that inadequacy though not gross is sufficient.

We will quote from several text books relied on in part by counsel on each side, and refer to several decisions in the federal courts. In addition to the quotations already made from Freeman, the following is from section 304d: "It is, perhaps, not correct to say that any of our courts have either absolutely adopted or absolutely rejected the English rule respecting the opening of the biddings on an offer of an increased bid. Whether they shall be opened is a question addressed to the sound discretion of the court making the sale, to be determined from all the circumstances, and such determination will rarely be reviewed upon appeal." Rorer (Judicial Sales, Sec. 28) says: "The view that confirmation may not be refused for mere inadequacy of price is clearly against the current of authorities in regard to judicial sales, and as a doctrine, is applicable only to execution sales at law, which will not be set aside for mere inadequacy of price," and (Sec. 106), "the chancellor has a broad discretion in the approval or disapproval of such sales," and (Sec. 549) "if there be no fact or circumstance relied on to set a sale aside but inadequacy of price, then the inadequacy must be such as in itself to raise the presumption of fraud, or else the sale will not be disturbed. But if in addition to such inadequacy there be any appearance of unfairness, or any circumstance, accident, or occurrence in relation to the sale of a character tending to cause such inadequacy, then the sale will be set aside; but inadequacy of price is still the main ground

of disturbing the sale, for if the price were full value, or even a passable one, then the objectionable facts or circumstances could have worked no evil." In 17 Am. & Eng. Enc. of L., 2d Ed., 1000-1002, the rule is stated thus: "It is well established that, as a general rule, a judicial sale will not be set aside on account of mere inadequacy in the price realized thereat. But, on the other hand, it is well recognized that a sale may be set aside where the inadequacy is so gross as to shock the conscience, or raise a presumption of fraud, or unfairness, or mistake." Jones (2 Mortgages, 6th Ed. Sec. 1638) says: "It rests wholly in the discretion of the court whether the sale shall be confirmed or not, and this power will be exercised prudently and fairly in the interests of all concerned," and (Sec. 1641) "the inadequacy of price may be such as to be of itself an indication of fraud or unfairness; but if not so gross as to indicate fraud, when taken in connection with other circumstances, it is ground for setting the sale aside and ordering a resale." Wiltsie (Mortgage Foreclosures, Sec. 536) says: "A sale may be set aside, especially before confirmation, for fraud, unfairness or irregularity or for want of notice, but it seems not for mere inadequacy of price, unless it results in a clear sacrifice," and (Sec. 539) "mere inadequacy of the price brought by the mortgaged premises on a foreclosure sale is not a sufficient ground for ordering a resale of the premises, unless the inadequacy is so great as to be evidence of unfairness or fraud." Many cases are cited in these works in support of the various statements made.

Referring to the cases in the federal courts,—it is true that the *Graffam* case above mentioned was an independent suit in equity to set aside an execution sale, but the remarks of the court above quoted were made with reference to setting aside or confirming judicial sales proper. The court was not misled into applying to judicial sales the rule applicable to execution sales. On the contrary it tended rather to apply even to execution sales the rule applicable to judicial sales. The conclusions of the court in regard to judicial sales were evidently

drawn after careful investigation and consideration and, considering the high authority of the court, are entitled to great weight. They were approved in *Pewabic Mining Co. v. Mason,* 145 U. S. 367, an appeal from the confirmation of a judicial sale, and in *Schroeder v. Young,* 161 U. S. 334, a suit to set aside an execution sale. The same view is taken by other federal courts. The circuit court of appeals in *Magann v. Segal,* 92 Fed. 252, gives one of the most satisfactory reviews of the law, both English and American, upon this subject and refers not only to cases in the federal supreme court but to a number of cases in the federal circuit courts. The court, among other things, quotes from an earlier federal decision as follows: "Until the practice is in some way satisfactorily regulated, the best solution of the subject seems to be to hold closely to the public policy which protects the sales against instability by refusing to set them aside, unless the price offered in advance is so great, in proportion to the bid already made, that it affords substantial evidence that for some perhaps unknown reason, the property has been greatly undersold,—so much so that the purchaser has not merely a bargain, with°a fair margin for profit, but an unconscionable advantage of the parties for whose benefit the sale has been made." The court also says: "Upon the weight of American authority, we conclude that mere inadequacy of price, unless so great as to shock the conscience, will not justify the reopening of biddings. * * * On the other hand it is not expedient that the court shall lose all control over such sales. * * * A price so inadequate as to shock the conscience, or mere inadequacy, coupled with misconduct upon the part of those conducting the sale, or fraud, or conduct bordering upon fraud upon the part of the purchaser under the practice of both English and American courts, has always been regarded as furnishing good cause for reopening the biddings." See also *Fed. Ins. & S. D. Co. v. Roanoke St. R. Co.,* 98 Id. 475, and *Files v. Brown,* 124 Id. 133. The federal decisions all seem to be to the effect that gross inadequacy such as shocks the conscience

or implies unfairness in the sale is sufficient to justify setting it aside. This view seems to receive most support from the state courts also.

This is the view that was taken in *Smith v. S. S. City of Columbia,* 11 Haw. 709, in which this court says: "There is but little doubt that the general rule governing the confirmation of a judicial sale is that the sale, if regular, will be confirmed unless the price obtained is so grossly inadequate to the value of the property sold as to shock the conscience of the court and be presumptive evidence of fraud. We find that there was no irregularity in the sale and the only ground upon which the sale is attacked is that of gross inadequacy," and, after reviewing the evidence, "We feel obliged, in view of the evidence adduced, to hold that the value that the vessel would produce to the purchaser is not so grossly inadequate as to authorize a resale." In view of what has been said it is evident that appellees' contention that the court in the case just referred to was misled through inadvertance or otherwise into applying to a judicial sale a rule applicable only to execution sales, is without foundation and, on the other hand, that appellants' contention that the court was of the opinion that there must be not only such gross inadequacy as to shock the conscience, but also other evidence of fraud, is equally untenable. It is true the court used the expressions "shock the conscience" and "be presumptive evidence of fraud" in the conjunctive, although similar expressions when coupled in other cases and in the text books are generally stated in the disjunctive, and yet it is clear that the court did not intend these as being two different or unconnected things which must unite in order to warrant setting aside a sale. Not only is the word "fraud" used in expressions of this kind in a general sense as including surprise, accident, mistake, irregularity, etc., as well as fraud, misrepresentation, misconduct, etc., but it is the grossness of the inadequacy which implies the fraud or unfairness, and it is sufficient if the inadequacy is so great as to imply that, even though it does not suggest the nature of the fraud and there is nothing else to

show in what it consisted. As stated in one of the quotations above made, it is sufficient if the grossness of the inadequacy is such as to afford substantial evidence that for some perhaps unknown reason the property has been greatly undersold.

No inflexible rule can be laid down for all cases. More would be required for setting aside an execution sale or a judicial sale after confirmation than a judicial sale before confirmation. More might also be required for setting aside certain classes of judicial sales before confirmation, as, for instance, when such sales must be made of necessity or of right and the main object is to obtain the proceeds for the purpose of paying a debt on foreclosure of mortgage or otherwise, than for setting aside other judicial sales before confirmation, as, for instance, when the main object is not to obtain the money for the purpose of paying an obligation but to sell the property for some purpose, as, for instance, to realize on it before it depreciates in value or for the purpose of acquiring means for improving an estate or making a better investment. The main idea is on the one hand to maintain the stability of judicial sales and not deter bidders by rendering such sales liable to be set aside for trivial reasons and on the other hand to protect interested parties and not unduly sacrifice their property.

In the present case the appellees contend that there are other circumstancs which would justify setting aside the sale in conjunction with the inadequacy of the price even if gross inadequacy alone were not enough or if it were found that there was not gross inadequacy in this case. For instance, it is claimed that the defendant Desky who, next to the bondholders, was most interested in the property, was excusably misled into supposing that the sale was to occur at a different time or place and so was unable to be present. Another circumstance claimed is that although the decree directed the commissioner to "sell all and singular the property * * * or so much thereof as shall be necessary," which, it is contended, meant a sale in parcels, the trustee and the bondholders, intending to bid it in themselves, agreed that it should be sold as a whole, and that the fact

that it was generally known that the bondholders intended to bid led some who might otherwise attend and bid to remain away from the sale and others to attend unprepared to bid, and that the bondholders changed their minds at the last moment and refrained from bidding. How far these alleged circumstances are sustained by the evidence or whether, if sustained, they would be sufficient in addition to inadequacy, if anything in addition were needed, for setting aside the sale, we need not say. In *Schroeder v. Young,* 161 U. S. 337, the court states that where there is inadequacy of price courts are not slow to seize upon other circumstances impeaching the fairness of the transaction as, for example, if the sale has been attended by any irregularity or if several lots have been sold in bulk when they should have been sold separately or sold in such manner that their full value could not be realized, or if bidders have been kept away, etc., and similar views have been expressed by other courts. In this case the circuit judge found not only that the price bid was grossly inadequate and that an amount vastly in excess of that could be obtained on a resale, but that the evidence was overwhelming that the actual value of the property was at least seven times the amount of the highest price bid and that a higher price could be obtained for the property if sold in parcels than as a whole. It is evident that the property could not be sold as a whole as a going concern; it could be sold only as a wreckage proposition whether sold as a wohle or in parcels. Some courts and text writers take the view that matters of this sort are so much within the discretion of the trial judge that they are not appealable, but the better opinion, as it seems to us, elsewhere and the one that is in conformity with our own practice, is that orders confirming or setting aside judicial sales are reviewable but that they should not be reversed except where they are clearly erroneous. Considerable weight should be given to the opinion of the trial judge in a matter of this kind. Under the circumstances we are of the opinion that the order appealed from should not be reversed and accordingly it is affirmed.

*Castle & Withington* for H. R. T. & L. Co. and C. G. Ballentyne, appellants.

*Smith & Lewis* and *L. J. Warren* for the trustee, appellee.

*Thayer & Hemenway* for Pac. Heights Ry. Co. and C. S. Desky, appellees.