MARIA K. HARBOTTLE and WILLIAM HARBOTTLE, her husband, *v.* T. W. RAWLINS.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JULY 6, 1897.                DECIDED JULY 20, 1897.

FREAR AND WHITING, JJ., AND CIRCUIT JUDGE CARTER, IN PLACE OF JUDD, C.J., ABSENT.

Decree dismissing a bill in equity to set aside a deed on the grounds of undue influence and misrepresentation, affirmed.

OPINION OF THE COURT BY FREAR, J.

This is a suit in equity to procure, on the grounds of undue influence and misrepresentation, the cancellation of a deed ex-

ecuted by the complainants to the defendant November 30, 1895, of certain land at Kapalama, Oahu, described as Apana 1 in Royal Patent 109, L. C. A. 518, and an undivided moiety of certain land at Hamakua, Hawaii, described in Royal Patent 2500 to Paumano.

After due consideration, we are of the opinion that the decree appealed from dismissing the bill should be affirmed and we adopt the findings of the Circuit Judge as follows:

"About a month prior to the date of the signing of the deed, William Harbottle, one of the complainants, met one R. N. Boyd on the street, told him he wished to sell the Hamakua land now in dispute, and requested him to go with him to the office of one Dr. McKibbin there to ascertain what sum said McKibbin was willing to pay for said land. Boyd did so, the result of the interview, which was held in the presence of and understood by Harbottle, being that McKibbin offered six hundred dollars for the Hamakua land and nine hundred dollars for the Hamakua and Palama lands jointly. This offer was, on Boyd's advice, not accepted. Boyd and Harbottle then separated, nothing further being said between them at that time about the matter.

"Two or three days prior to the 30th of November, Boyd informed defendant Rawlins of the fact that complainants wished to sell their land. Rawlins desired to purchase and with Boyd went to complainants' residence to endeavor to effect a transfer. The evidence for defendant is that at this conversation, at which William Harbottle was also present, an understanding was arrived at, and that the terms were that complainants were to convey to Rawlins all their Palama and Hamakua lands, and that Rawlins was to assume the twelve hundred dollar mortgage on the land, set off a portion of the Palama land for complainants' use for life, and give complainants one-half of the rents of the remainder of the land, both at Palama and Hamakua, also for life, and that complainants were to pay for one-half of such improvements as Rawlins might make on the Palama land. Complainants deny that a definite agreement

was made on that day. I think that it is immaterial whether it was or not, if, at the final interview, complainants consented thereto freely and without fraud practiced upon them.

"But whatever was said on that day, Boyd returned, either on the same day or the next, and, at Rawlins' request, surveyed a portion of the Palama premises as desired by the complainants, taking a description thereof to S. K. Kane, an attorney of this Court, who was to draw up the documents for carrying into effect the agreement of the parties.

"On the 30th of November following, Rawlins, Boyd and Kane went to complainants' house for the purpose of having the deed executed. The attorney had advised, (and his advice had been accepted by Rawlins) that the agreement as reported to him, would be best carried out by the execution of two documents, one an absolute deed of all the land from complainants to defendant, and the other an instrument to be signed by Rawlins, securing to complainants the various privileges above noted; and these papers had been drawn accordingly. Both complainants were present at this interview. As to what then took place, I rely most strongly upon the evidence of Mr. Kane, an entirely disinterested witness. The two instruments, which were in the Hawaiian language, were read and carefully explained by the attorney to the complainants. It is well to note, on the question of veracity, that the two complainants and their witness Kealoha (w), all insist strongly that only one document was read to them by Mr. Kane. As soon as complainant Kealia heard mention of the Hamakua land, she objected and said that under the agreement that had been made that land was not to be included in the transfer. Boyd replied that it was. Rawlins, becoming disgusted with the disagreement, left the room and premises, saying that he would leave the matter to Kane and Boyd. The latter told complainants that that was the best he could do, that they knew that McKibbin had offered only nine hundred dollars, that they would live there and get one-half of the Hamakua rents. Still they objected. Mr. Kane then re-read the documents, explaining fully all their provisions. Then fol-

lowed a conversation in low tones between the complainants, during which the husband said to the wife, "This is satisfactory to us; we have piece here for life and have half of Hamakua rent for life; I think we better do this." At the end of this conversation, both signed the deed, and, as testified to by Mr. Kane, who also took their acknowledgments, they did so freely and voluntarily, and understanding fully the contents of the instruments. No undue influence was exercised by either defendant or Boyd. Upon leaving the home of the complainants, and while on his way to town, the notary obtained the signatures and acknowledgments of defendant and his wife to the second instrument.

"From all the evidence, I further find that there was no misrepresentation by Boyd or by any one else as to the contents of the instruments, or as to the conditions or terms of the sale, or as to a foreclosure sale having been advertised or being about to take place. Complainants claim that there was misrepresentation on the subject of the Hamakua rents, the allegation in the bill being that Boyd assured them that they would have one-half of all said rents. Mr. Kane's evidence shows clearly that complainants understood before signing that they were to receive for life only one-half of the rents of their one-half interest in the land. It is unnecessary to construe now the clause relating to these rents in the instrument signed by Rawlins; for if it secures to complainants only one-half the rents of their one-half interest, my finding is that that was fully explained to them, and if, on the other hand, it secures to them one-half of the rents of all the land, then complainants have received all that they claim and have no reason to complain.

"As to the allegation that complainants signed the deed under fear and constraint and by reason of undue influence caused and exercised by Rawlins or Boyd, I think that that is amply disproven. The mere fact that Boyd said that complainants would have to pay the attorney's fees and expenses of surveying, if they did not sign the deed, is insufficient to show constraint. The amount would have been only about twenty dol-

lars; the complainants did not even care to ask how much it was. They have clearly shown that it was not that statement that caused them to sign.

"As to inadequacy of consideration. From the evidence it appears that the land in question, subject only to the life interest of an aged Hawaiian in a portion of the Palama land, and otherwise unencumbered by any conditions, is worth between four and five thousand dollars; but it also appears, from the uncontradicted testimony of an expert, that, subject to the conditions under which Rawlins took it, it is at least doubtful whether a higher price could have been obtained for the land. The language used by the witness was: 'Subject to conditions named in deed, it is difficult to state the value of the land. I cannot give the value. If the proposition was made to me, I would not take it, I haven't money enough. Men with lots of money who could afford to wait, might do it. I would not consider it an extraordinarily soft snap. Considering the rents now accruing, one-half of them would be a medium rate of interest on twelve hundred dollars.' Certainly it cannot be said that the inadequacy of consideration in this case is so great as to 'shock the conscience.' And that is what is necessary in order to justify an inference of fraud, and consequent rescission. Mere inadequacy of consideration is insufficient to set a bargain aside. 'If a person of ordinary understanding, on whom no fraud has been practiced, makes an imprudent bargain, no court of justice can release him from it. Inadequacy of consideration is not a substantial ground for setting aside a conveyance of property.' 1 Story's Eq. Juris., Sec. 237.

"The evidence does not establish the existence of any confidential relation between the complainants and defendant or Boyd at the date of the transaction in question, nor does it show that complainants reposed any great degree of trust or confidence in either of them. On the contrary, the testimony of the complainants themselves is that they did not believe everything that Boyd said, and their acts during the negotiation confirm this statement.

"Upon all the evidence, and upon the law, I am of the opinion that the complainants are not entitled to the relief prayed for.

"The bill is dismissed."

The decree appealed from is affirmed.

*Magoon & Edings,* for complainants.

*A. G. M. Robertson,* for defendant.