## W. J. SMITH *et al. v.* STEAMSHIP "CITY OF COLUMBIA."

## IN THE MATTER OF THE CONFIRMATION OF THE SALE OF THE STEAMSHIP "CITY OF COLUMBIA."

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED MARCH 17, 1899.        DECIDED MARCH 21, 1899.

JUDD, C.J., WHITING, J., AND CIRCUIT JUDGE STANLEY, IN PLACE OF FREAR, J., ABSENT.

The practice of courts of chancery and admiralty requires that the sale ordered be confirmed before the purchaser has a right to the property.

A successful bidder at a judicial sale has a right to be heard in the matter of the confirmation thereof.

A judicial sale, if regular, will be confirmed unless the price obtained is so grossly inadequate to the value of the *res* as to shock the conscience of the court and afford presumptive evidence of fraud.

OPINION OF THE COURT BY JUDD, C.J.

The steamship City of Columbia was sold at auction by the marshal under an order of sale of the court to satisfy a claim for wages by the officers and men amounting to $14,000. The last and best bid for her was $1,500 by one Henry L. Evans and the vessel was knocked down to him. Before the marshal made return the libellants protested against the confirmation of

the sale, saying that the successful bid was grossly inadequate, and that the vessel's value is much more.    Various affidavits were presented showing that certain parties were willing upon a re-sale to make opening bids of $3,000 respectively.    The Circuit Judge declined to confirm the sale and ordered a re-sale.    His jurisdiction to do so was contested by the successful bidder, claiming that the sale was good and passed the title to the purchaser without confirmation.    We think this contention is unsound.    It was a judicial sale and required confirmation not only as regards the question of expenses and costs and distribution of the assets, but whether the sale was fair and properly conducted.    Upon confirmation a judicial sale in admiralty is subject to such objections as might be made to it if it was in equity.    Without quoting much from the authorities, we take the law as laid down by U. S. District Judge Brown in "The New Hampshire" Fed. Cases, No. 10,160. The judge, (now a justice of the Supreme Court of the United States) says: "The practice of courts of chancery and admiralty requires that the sale be confirmed before the purchaser has a right to the property.    Confirmation is said to be the judicial sanction of the court.    Until then the bargain is incomplete."

We make no question that a successful bidder at such sales should be heard in the matter of the confirmation thereof, though not to be made a "party" in the original cause.

The action of the judge in ordering a re-sale was appealed to this Court.    The amount of the sale to Evans would not cover the marshal's expenses and costs incurred in the case of the vessel and of course would realize nothing to the libellants who are seamen and wards of the court, and we were therefore anxious to look into the matter closely in order to afford them some relief, if possible.    There is but little doubt that the general rule governing the confirmation of a judicial sale is that the sale, if regular, will be confirmed unless the price obtained is so grossly inadequate to the value of the property sold as to shock the conscience of the court and be presumptive evidence of fraud.    We find that there was no irregularity in the sale and the only ground upon which the sale is attacked is that of

gross inadequacy.  Upon the evidence we are satisfied that the
expense of repairing the vessel so as to make her seaworthy
and capable of being insured would be too great to afford any
reasonable expectation that a purchaser in the Honolulu mar-
ket would undertake the enterprise.  The official board of sur-
vey agrees that the repairs to the hull and other incidentals in
order to fit her for a voyage from Honolulu to San Francisco
merely, would cost in the neighborhood of $10,000 and that
then further repairs and a general overhauling would be re-
quired.  They found the port water-way broken right across
amidships; indications of very severe straining in the engine
room; and a leak in the vicinity of the sleeve or in the sleeve
itself, the vessel making while in port $1\frac{1}{2}$ inches of water per
hour.  She is hogged on the port side which indicates structural
weakness and possibly injury to her keel which can only be
ascertained upon dry-docking.  The report specifies the necessity
of other repairs.  On her last intended voyage from Honolulu
to Seattle she was obliged to put back and arrived at the port
of Hilo in November, 1898, disabled and badly leaking.  An
official survey was ordered by the U. S. Consular Agent at Hilo
and the board found the condition of the vessel unseaworthy
and unfit even to leave Hilo without repairs, being practically
broken backed and unfit for sea; and in their opinion the cost
of repairing and getting her ready for sea even in a port where
facilities were good would amount to more than the repaired
value of the ship.  They therefore recommended that she be
condemned.  The consensus of the opinions of the shipmasters
and mechanics who testified is, that she would not be worth the
expense of permanent repairs.

Estimated values of articles on board of the vessel easily
capable of removal were adduced, but in this very limited mar-
ket whether they would realize their just value would depend
on whether any particular purchaser had in mind any special
use to which they could be devoted, as for instance, the sails
would not find a ready market unless they were of the style and
size suited to vessels coming in or going out this port.  The
marine engine might be worth considerably more, if immediate

use could be made of it as an engine, than if broken up and sold as scrap iron.  The detailed estimates of the value of the materials taken from the ship if broken up would have to be reduced by the cost of the labor expended in removing them, estimated by some at 50% of the obtainable value, and by others regarded as being so great as to afford no profit.  It may be that the purchaser in question might recover the amount of his purchase money by a sale of the boats, sails, anchors, dynamo and coal, and other articles easily removable, but how much, if any, profit could be realized from a sale of such articles as could only be removed by breaking up the vessel, is purely a matter of conjecture.

We feel obliged, in view of the evidence adduced, to hold that the value that the vessel would produce to the purchaser is not so grossly inadequate as to authorize a re-sale, and therefore remit the cause to the Circuit Judge below with directions to confirm the sale.

*G. A. Davis, L. A. Dickey* and *A. L. C. Atkinson* for the purchaser, H. L. Evans.

*Kinney, Ballou & McClanahan* for libellants.