## SARAH ANNA BERGER *v.* CHARLES W. BOOTH and CHARLES S. DESKY.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JANUARY 7, 1901.    DECIDED FEBRUARY 25, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A bill in equity was brought to set aside a deed on the ground that it was obtained by misrepresentation and fraud. Gross inadequacy

of consideration, the existence, between the grantee and the grantor, of the relation of brother and sister, the reposing of great trust and confidence by the sister in the brother, and the making of false representations by him to her concerning the value of the land conveyed, were averred and relied upon as tending to show fraud. Held, that the essential averments of the bill were not sustained by the evidence adduced. Bill dismissed.

### OPINION OF THE COURT BY PERRY, J.

In this proceeding, a suit in equity, the relief prayed for is that a certain deed executed in San Francisco by the complainant to the respondent Booth, her brother, and dated September 15, 1898, be cancelled and set aside on the ground that it was obtained by fraud. The deed conveys to the grantee, for the consideration of three thousand dollars, all of the grantor's right, title and interest in and to certain lands situate in Pauoa and Nuuanu, Oahu. At the trial below, the court, at the close of the complainant's case, was of the opinion that the bill should be dismissed; from the decree entered to that effect, the case now comes by appeal to this Court.

The substantiative allegations of the bill upon which reliance is placed to obtain the relief sought, are that the relationship of brother and sister exisσed between Booth and complainant and that by reason thereof she placed great trust and confidence in him and in his representations concerning the value of her interest in the property in question, that Booth falsely and with intent to cheat and defraud his sister, represented to her that her said interest was of the value of not more than three thousand dollars and that in consequence of said representation and relying thereupon she executed the deed, and that the consideration for the conveyance was grossly inadequate.

As to the first of these allegations. The complainant took the stand in her own behalf and testified at great length. In the course of her cross-examination a number of letters of various dates were identified by her as having been written by herself to one of her sisters, Clara. It will serve no useful purpose to quote

here in detail from those letters or from her testimony such portions as are material to the subject immediately under consideration and thus to publish those quotations to the world. Suffice it to say that both her testimony and her letters not only disprove the truth of the allegation in question but show beyond any doubt that during the period commencing at least in 1894 and continuing up to and including the date of the deed the relations existing between her and her brother were most strained and bitter and that she positively distrusted him particularly with reference to all of his financial and business dealings either with herself or with any other member of the family. In this transaction she reposed in him no trust or confidence,—she dealt with him at arm's length, precisely as she would with any stranger.

The complainant testified that her sister Clara, in a letter received in San Francisco a few hours before the execution of the deed, reported her brother Charles as saying that complainant's interest in the property was not worth more than three thousand dollars, and, further, that Walsh, Booth's agent in San Francisco, repeated this assertion as to value as coming from Booth. Assuming, but without finding, that these representations were made and that they were false, the fact remains that they were not relied upon by the complainant and that she was not thereby induced to make the conveyance. Not only did she distrust her brother but, as her own testimony and letters clearly show, she had, prior to the execution of the deed, independent advice as to the value of the land from a number of disinterested men who, through long residence in these Islands, were familiar with the values of land here. Some of these men advised her in ample time to permit due consideration on her part and, in fact, even before she wrote requesting her sister to tell Charles that she would sell for three thousand dollars, that the whole land was worth fifty thousand dollars and that she had better ask five thousand dollars for her interest or not sell at all. In spite of that advice, however, and for reasons which to her seemed sufficient she determined to sell for three thousand dollars. In a letter of August 19th, 1898, to Clara, wherein she recites the above

stated advice and refers to the increase in land values in Hono-
lulu due to annexation, she says: "But I look at it this way.
1 am sick and need the money now more than I will byè and
bye.    *    *    *    I leave it entirely to you, Clara, to tell Charlie
what I say that I will sell for $3000. cash and quit all claim.
If he consents, let me know and I will send the power of attor-
ney down to you or some one else to act for me." In another
letter, undated, she says: "Well, Clara, I signed the papers and
got the money.    *    *    *    I thank you for your kindness and
influence you brought to bear in the matter in settling up so
quickly for as you say I certainly need it now." She sold of
her own free will, because it seemed to her best to do so, and for
a price named by herself with full knowledge of all material
facts and circumstances and after receiving independent and
disinterested advice. Upon all the evidence, the averments of
misrepresentation and of reliance thereupon are, we believe,
utterly without foundation.

As to inadequacy of consideration. The land in question was,
with other property, conveyed by Joseph Booth, the father of
the two principal parties herein, by deed dated April 30, 1866, to
trustees in trust for certain uses and purposes therein named.
Joseph Booth died intestate, leaving surviving him his widow,
who is still living, and nine children, two of whom have died
unmarried and without issue. Whether or not the deed of trust
is void as attempting to create a perpetuity, what interest, if any,
complainant had in the property prior to the date of her con-
veyance by virtue of the deed of trust or otherwise, and whether
or not she had lost that interest by adverse possession or other-
wise, are questions upon which complainant and respondent
Booth seem to have entertained differing views. Complainant's
counsel argues on the theory that her interest was an undivided
one-seventh, while on behalf of her brother it is contended that
at best she owned only a one-ninth interest subject to a life
estate in her mother. Booth personally has contended for many
years that complainant had lost whatever interest, if any, she
originally had in the land. It is unnecessary in this case to
construe the deed of trust or to say what interest, if any, com-

plainant had. It may be assumed for the purposes of the case that she owned an undivided one-seventh interest. In order to show inadequacy of consideration it is averred in the bill that, in or about September, 1898, Booth entered into negotiations with respondent Desky for the sale and purchase of the land in question for the sum of $100,000. and that on February 15, 1899, the said parties executed an agreement in writing for such sale and purchase and it is argued that therefore complainant's interest therein at the date of the deed was worth $14,260. The correctness of this averment also is wholly disproved by the evidence. The property for which the sum of $100,000. was agreed to be paid included not only the land in which complainant claimed an interest (Booth had purchased all other outstanding interests in this land) but also a water right which, it is undenied, belonged to Booth alone. Counsel for complainant claimed in argument that the value of this water right was only $800. because that was the sum paid by Booth for the kuleana on which the water had its source. The undisputed evidence, however, is that Booth at various times within a period of about fifteen years last past has paid in all the sum of $37,000. for the purchase of kuleanas which had rights in the water in question and all of which have been deprived of said water in consequence of the sale to Desky. Undisputed evidence further shows that without the water right obtained from Booth, the land itself which Desky purchased for the purpose of improvement and of dividing up into residence lots for sale, was worth comparatively little,—its value was merely that of pasture land. Precisely what its value was, without the water right, does not appear. It had yielded $400. rent per annum for pasturage purposes. Mr. Desky, called as a witness for the complainant, testified that its value, exclusive of the water right, was between $50. and $100. per acre; but the evidence does not show what the total area was. Complainant, upon whom the burden of proof lies, has failed to show that the price paid to her was grossly inadequate or even that it was inadequate at all. A sale, moreover, can not be set aside for mere inadequacy of consideration; it is only where the

price paid is so grossly inadequate as to shock the conscience and raise a strong presumption of fraud, that equity will relieve, the ground of relief being, not the inadequacy, but the fraud evidenced thereby.

As additional ground for the reversal of the decree and for an order remanding the cause for further hearing, three alleged errors in rulings on the admission or rejection of evidence are pointed out: (1) the refusal to allow the question, addressed to Booth, "Will you be kind enough to state how much you paid all the other heirs, state the whole sum together. You paid Mrs. Berger $3000., how much more did you pay in all?"; (2) the refusal to allow the question to be put to complainant, "Did you have any conversation with Mr. Magoon about this matter in San Francisco?"; (3) the admission in evidence, upon the respondent's offer, during the cross-examination of the complainant, of letters written and identified by her.

The first of these questions was asked after the re-cross-examination had ended and was not brought out by anything that preceded it. Neither its object nor its materiality was shown by counsel for the plaintiff. At that stage of the proceedings, the matter of permitting or disallowing the question was one within the discretion of the court. We think there was no abuse of discretion in the ruling made.

The second question was asked in re-direct examination and was not brought out by any new matter elicited in cross-examination. There was no abuse of discretion in the ruling; moreover, the evidence sought was not shown to be material.

There was no error in admitting the letters in evidence. Upon direct examination complainant had made certain statements; on cross-examination, respondent's counsel sought to destroy the effect of that testimony and to show by the witness herself that it was untrue and incorrect. The letters were in the nature of admissions by the complainant to that effect and were properly admitted in evidence.

The suit is without merit.    The decree appealed from is affirmed.

*Davis & Gear* for complainant.

*J. A. Magoon* and *Kinney, Ballou & McClanahan* for respondent C. W. Booth.

*Hatch & Silliman* for respondent Chas. S. Desky.