MARY MEADE COSTA BRENT, Plaintiff-Appellant, *v.* STAVERIS DEVELOPMENT CORP., et al., Defendants-Appellees, and GECC FINANCIAL CORPORATION, Third-Party Plaintiff-Appellee, *v.* JERRY STAVERIS, et al., Third-Party Defendants-Appellees, and FRED A. ROMANCHAK, Purchaser-Appellee.

NO. 11454

(CIVIL NO. 5510(1))

AUGUST 19, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Plaintiff-Appellant Mary Meade Costa Brent (Brent) appeals the August 12, 1983 "Decree of Foreclosure and Order Authorizing and Confirming Sale and Directing Distribution of Proceeds" and the judgment entered May 2, 1986. We affirm.

## I.

On October 31, 1980, Staveris Development Corp., Marmeco Corp. (Marmeco) (collectively Defendants), Jerry and Penny Staveris (Staveris), and Angelo and Elaine Tsakopoulos (Tsakopoulos) executed a promissory note in favor of GECC Financial Corporation (GECC) in the amount of $350,000.00. This note was secured by a mortgage (mortgage) on 3.77 acres of real property commonly called "Kula Lodge" (Kula Lodge), owned by Marmeco and leased to Kula Restaurants, Inc. Also on October 31, 1980, Defendants executed a $470,000.00 promissory note in favor of Brent secured by a second mortgage (second mortgage) on Kula Lodge.

Brent filed a complaint against Defendants on September 4, 1981, to foreclose her second mortgage, and on November 2, 1981, amended her complaint to include GECC as a defendant. On December 7, 1981, GECC answered and, in a cross-claim against Defendants and a third-party complaint against Staveris and Tsakopoulos, sought to foreclose the mortgage. On December 21, 1981, the court appointed Ted Yamamura as receiver to collect lease rent payments from Kula Restaurants, Inc. On January 19, 1982, Brent moved for summary judgment and an interlocutory decree of foreclosure.[1]

On January 22, 1982, GECC moved for summary judgment and interlocutory decree of foreclosure.[2] On February 12, 1982, the lower court discharged the receiver, ordered the foreclosure sale of Kula Lodge, and appointed Ted Yamamura and Gloria Billingsley co-commissioners (co-commissioners) to execute the sale and as receivers for the lease rents. The co-commissioners were specifically

> directed to attempt to sell the subject property, first, by way of a private sale for at least the upset price of $900,000.00, subject to the confirmation of such sale by this Court, and if they are unable to secure a firm, unconditional cash offer to purchase

[1]Defendants were defaulted on October 23, 1981.

[2]On January 21, 1982, default was entered against Defendants on GECC Financial Corporation's (GECC) cross-claim and against Jerry and Penny Staveris and Angelo and Elaine Tsakopoulos on GECC's third-party complaint.

the subject property for at least the upset price of $900,000.00 by April 2, 1982, they are directed to offer the property for sale to the highest bidder at public Commissioner's sale by auction, or by private sale, without an upset price, after notice of such sale first being given by said Commissioner by publication in the classified section of a daily newspaper of general circulation printed and published in the City and County of Honolulu and/or in the County of Maui, State of Hawaii. Said notice shall give the date, time, and place of sale and an intelligible description of the property, and shall disclose all of the terms of sale herein mentioned. Said Co-Commissioners shall have further authority to continue said sale from time to time in their discretion.

The co-commissioners advertised the property for sale, contacted realtors, and disseminated sales brochures. On Brent's motion, the period for the private sale was extended to September 2, 1982. The only offer received in that time was a conditional one, and on October 1, 1982, Kula Lodge was put up for public auction.[3]

At the public auction, "[a]fter brisk bidding," Mike Hunte and Richard Dant (Hunte/Dant) submitted a high bid of $342,000.00 (Hunte/Dant bid). According to the co-commissioners' report, "those present at the auction were reminded after the auction was formally closed that offers would continue to be entertained by the Co-Commissioners." Also, individuals who had previously showed interest in Kula Lodge were again contacted and informed that the co-commissioners would continue to entertain offers.

On October 12, 1982, the co-commissioners received from Fred Romanchak (Romanchak) an offer of $380,000 (advance bid) accompanied by a cashier's check for $38,000. On October 19, 1982, GECC moved to confirm the sale to Romanchak, and the following day Hunte/Dant moved to confirm the sale of the property on their bid. The confirmation hearing was originally scheduled for October 22, 1982, but at Brent's request it was continued to November 5, 1982. The hearing was further delayed when Brent, on November 5, 1982, filed in the United States Bankruptcy Court an

---

[3]It appears that the $900,000 upset price and the private sale period was an attempt to accommodate Mary Meade Costa Brent's (Brent) desire for a sale price sufficient to pay the second mortgage as well as GECC's mortgage.

"Involuntary Petition in Bankruptcy" against Defendants, which resulted in an automatic stay. The stay was later terminated and the confirmation hearing was held on July 5, 1983.

At the hearing, over Brent's objections, the trial judge rejected the Hunte/Dant bid and reopened the bidding, starting with Romanchak's advance bid. A further auction was conducted in open court and, after a number of bids were submitted, the court orally confirmed the sale to Romanchak on his high bid of $401,000.00. On August 12, 1983, the trial court entered the Confirmation Order, which Brent appealed on September 12, 1983. On April 16, 1985, Brent's appeal was dismissed by this court for lack of appellate jurisdiction. Thereafter, GECC filed an acknowledgment that its mortgage had been satisfied from the auction proceeds, and on May 2, 1986, Brent was awarded a deficiency judgment for $720,633.35 (judgment). Brent appealed.[4]

The dispositive issue is whether the lower court abused its discretion when it reopened the bidding in open court. We answer no.[5]

## II.

Brent concedes that the lower court correctly rejected the Hunte/Dant bid, arguing that it was "grossly inadequate."[6] How-

---

[4]Appellee GECC asserts in its answering brief that Brent's appeal is moot. The argument was previously made by appellee Fred Romanchak (Romanchak) in a motion to the supreme court to dismiss the appeal for mootness. The supreme court denied Romanchak's motion. In light of this earlier disposition, we will not discuss the issue.

[5]Brent also argues on appeal that the lower court erred in awarding fees to the co-commissioners, in reimbursing the co-commissioners for their attorney fees, and in not surcharging the co-commissioners for uncollected rents. However, the lower court's actions in those matters were not objected to or questioned by Brent in the lower court and she is precluded from raising those issues on appeal. *Honolulu Federal Savings & Loan Ass'n v. Pao*, 4 Haw. App. 478, 668 P.2d 50 (1983). Moreover, our careful review of the record indicates the trial court was correct in each disposition.

[6]Brent also argues that events occurring before and after the auction put in question the fairness of the auction. However, our examination of the record indicates that the sale was regularly held and fairly conducted. *Rupe v. Oldenburg*, 184 Neb. 229, 166 N.W.2d 417 (1969).

ever, Brent argues that the lower court reversibly erred when it proceeded to conduct another "auction" in the courtroom and then confirmed the high bid obtained at that time. Brent asserts that if, instead of proceeding with a new auction, the lower court had rejected the Hunte/Dant bid, appointed new commissioners, and ordered new notice and a new public auction, the sale would have attracted more bidders and obtained a higher sale price. She would have us remand this case with instructions to conduct a new public auction after due public notice. We find no merit in Brent's argument or the relief she seeks.

We start with the proposition that, "[t]he lower court's authority to confirm a judicial sale is a matter of equitable discretion." *Hoge v. Kane II*, 4 Haw. App. 533, 540, 670 P.2d 36, 40 (1983). "In exercising its discretion, the court should act in the interest of fairness and prudence and with just regard for the rights of all concerned and the stability of judicial sales." *Id.* The exercise of discretion by the lower court judge will not be disturbed on appeal except for abuse. *See id.*

In dealing with the problem of a conflict between the court's obligation to maintain the stability and purpose of the judicial sale and its duty to obtain the highest possible price for the real estate being sold, the Nebraska Supreme Court held that "a certain amount of judicial discretion [is] necessarily vested in the court to shield and promote justice under all circumstances." *Rupe v. Oldenburg*, 184 Neb. 229, 232, 166 N.W.2d 417, 420 (1969).

Brent argues that reopening the bidding based upon only a nominal increase in the bid price after the auction was closed discourages prospective purchasers from bidding at the public auction, since they would never know whether their bid would be sustained or not, and undermines rather than gives support to the stability of public auctions. We agree generally with those principles. But the successful bidder at a public auction is not vested with any interest in the land until the sale has been confirmed by the court. *Levy v. Broadway-Carmen Bldg. Corp.*, 366 Ill. 279, 8 N.E.2d 671 (1937). Therefore, he is always at risk of having his bid rejected. And although the successful bidder's rights should not be lightly disregarded, *Rupe v. Oldenburg, supra*, a bid advancing the purchase price and made before confirmation of the auction sale, which is not merely nominal but is substantial and material, may

form the basis for the proper exercise of judicial discretion in directing a resale or reopening the bidding. *Id; accord Seikert v. Soester,* 144 Neb. 321, 13 N.W.2d 139, 152 A.L.R. 527 (1944). Where the "advance" bid appreciably exceeds the highest public auction bid, the court is more likely to exercise its discretion to reject the result of the auction. *Id.*

In the instant case, the advance bid was in excess of the Hunte/Dant bid by $38,000.00, approximately 11%. Under the circumstances, the advance bid was not merely nominal but was a substantial increase over the Hunte/Dant bid, and we agree that the lower court did not abuse its discretion in not confirming the sale to Hunte/Dant.[7] It might well have been an abuse of discretion for the lower court to have done otherwise. In fact, Brent's opening brief concedes that it was not error for the lower court not to confirm the sale to Hunte/Dant. We turn, now, to the question whether the lower court abused its discretion in reopening the bidding and conducting the open court auction, rather than adopting the alternative advocated by Brent.

The circumstances of this case reduce to pure conjecture Brent's argument that a resale after further notice would ensure that a substantially greater sale price would have been obtained. The public auction in this case was held after due notice, and after efforts to sell the property at private sale. All interested parties were afforded the opportunity to bid for the property. Since the commissioners allowed offers to continue after the auction was formally closed and interested parties were informed of the confirmation hearing date, all interested parties, whether they were at the auction or not, had knowledge of the Hunte/Dant bid by the time of the confirmation hearing, and were aware that they could still offer to buy the property at a higher bid. In effect, the commissioners left the auction open for more bids right up to the confirmation hearing and, in essence, the lower court merely kept the auction going. Anyone who thought the property was worth more than the Hunte/Dant bid could have made a higher bid and Romanchak did so. Even if a new sale had been ordered by the

---

[7]We note, however, that the fact alone that Romanchak submitted his advance bid is not an indication that the Hunte/Dant bid was "grossly inadequate." *See* footnote 6, *supra.*

lower court, there is no guarantee that more interest in the property would have been generated, or that the successful bid at the new auction would have been as high or higher than Romanchak's final open court bid. Moreover, a new sale would have entailed more costs for the parties involved.

Under the circumstances, the trial court did not abuse its discretion when it reopened bidding at the confirmation hearing, *Rupe, supra,* and did not err in confirming the sale to Romanchak for his high bid of $401,000.00.

Affirmed.

*Walter R. Schoettle* for plaintiff-appellant.

*Dennis J. Niles* (*William M. McLeon* with him on the brief; *Paul, Johnson & Alston* of counsel) for Romanchak.

*Richard S. Kawana* (*Allen I. Marutani* with him on the brief) for GECC.

Joinder on GECC's answering brief:

*Edward S. Kushi, Jr.,* for co-commissioners-appellees (appearance only).