85 P.3d 644

### Joseph SUGARMAN, Plaintiff/Counterclaim Defendant–Appellant

v.

**Paul KAPU or Joseph Fedele; Heirs and Assigns of Bernice Paihinui, aka Bernice Paihinui Kekona; April Montalbo; and Chad Montalbo, Defendants/Cross–Claim Defendants–Appellees**

**Shigeru Ralph Gima; Kikue Katherine Gima; Sadao Stanley Inouye, Tsuya Thelma Inouye, Defendants/Counterclaimants/Cross–Claim Defendants**

**Ulupalakua Ranch, Inc., De fendant/Counterlaimant/Cross-Claimant/Cross-Claim Defendant**

**Melvanette M. Gragas; Sanoe Apolo; Rita Gragas; Faith Kihoi, Florence Keala Lani; Jesse Kuhaulua, Defendants/Counterclaimants/Cross–Claim Defendants**

**Heirs and Assigns of Kanao; Heirs and Assigns of Paele; Heirs and Assigns of Kuhaulua, Jr.; Heirs and Assigns of Kaaumoana; Heirs and Assigns of J.A. Kaianui, aka J.K. Kaianui; Heirs and Assigns of Kikaha; Heirs and Assigns of**

Ed. Z. Alapai; Heirs and assigns of Lilia K. Kamakaʻi, aka Lilliam K. Ekekela aka Lillian Kuulei Ekekela; Heirs and Assigns of James Von Ekekela; Heirs and Assigns of J.M. Kekai, Sr., aka John Manuia Kekai; Heirs and Assigns of Julia Kekai, aka Julia Namaunu; Heirs and Assigns of John Manuia Kekai, aka John M. Kekai, Jr.; Heirs and Assigns of Alice Manuia Kekai; Joseph Kekai or His Heirs and Assigns; Hattie Kekai aka Hattie Kekai Morada or her Heirs and Assigns; Heirs and Assigns of Elizabeth K.M. Paihinui; Bernice Paihinui, aka Bernice Paihinui Kekona; Anastasia Paihinui aka Anastasia Paihinui Duque, aka Anna Paihinui Duque or Her Heirs And Assigns; Gladys Paihinui, aka Gladys Paihinui Valdez, aka Gladys M. Paihinui Valdez or Her Heirs and Assigns; Celestine Paihinui, aka Celestine Paihinui Acang or Her Heirs and Assigns; George Paihinui or his Heirs and Assigns; Geraldine Paihinui, aka Geraldie Paihinui Deal aka Geraldine Meehala Deal or Her Heirs and Assigns; Hazel Paihinui, aka Hazel Paihinui Jung or her Heirs and Assigns; Heirs and Assigns of Julia K.M. Kapu; Elizabeth Kapu, aka Elizabeth Kapu Apolo or Her Heirs and Assigns; Alice Kapu, aka Alice Kapu Nobriga or her Heirs and Assigns; Hattie Kapu or her Heirs and Assigns; Mildred Kapu, aka Mildred Kapu Cruz or her Heirs and Assigns; David Kapu or his Heirs and Assigns; Ulupalakua Ranch, Limited, a Dissolved Hawaiʻi Corporation; William De Rego or His Heirs and Assigns; Hattie Piilani De Rego or Her Heirs and Assigns; Manuel R. Souza or His Heirs And Assigns; Robert James Hunter or His Heirs and Assigns; Mae Bylsma Hunter or Her Heirs And Assigns; S. Utsunomiya Enterprises, Inc., A Hawaiʻi Corporation; Margaret Ann Hecht; (U.S. Gov. County Of Maui, State Of Hawaiʻi; Linda Yap; Carina Gomes; Bo Kupono Acang; Juanita Flora Tolentino Celeste Acang; Imelda Kuuipo Acang; Stanford M.J. Manuia; Geraldine Hubbard; Hazel Jung; Alice Kapu Nobriga; Lorraine Makaaha Valdez; Rosina Rheinhard; Mildred Cruz; Elizabeth Kanikau Kapu Apolo; Victoria Q. White; James Warren Apolo; Sabio E. Reinhardt; Morris Haole Jr.; Kenneth Mokuau; Herbert Silva; Barbara Silva; Moses K.N. Haia, Jr.; Marie Malia Montalbo; Adjacent Landowners; Doe Estates; Doe Partnerships; DOE Corporations, The Spouse(s), Assign(s), Successor(s), Personal Representative(s), Executor(s), Administrator(s), Guardian(s) and/or Trustee (s) of the above named Defendants, all other persons unknown claiming any right, title, estate, lien, encumbrance or interest in the real property described in Plaintiff's Complaint, and to all whom it may concern, Defendants/Cross–Claim Defendants.

No. 24090.

Supreme Court of Hawaiʻi.

March 11, 2004.

John B. Simpson (Martin & Raynor, P.C.), on the briefs, for Plaintiff/Counterclaim Defendant–Appellant Joseph Sugarman.

Jack R. Naiditch, Wailuku, on the briefs, for Defendant/Cross–Claim Defendant–Appellee Joseph Fedele.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold that, (1) read in *pari materia,* Hawai'i Revised Statutes (HRS) §§ 668–1 (1993) and –14 (1993), relating to the partition of real property, vest the circuit court with equitable discretion in judicial sales of such property, to reopen bidding after public auction but before confirmation of the public auction bid and (2) the court's rejection of confirmation of the highest bid submitted at a public auction does not require a showing that inadequacy of the bid amounted to fraud.

I.

On October 5, 1993, Plaintiff–Appellant Joseph Sugarman (Appellant) filed a complaint in the Second Circuit Court of the State of Hawai'i (the court)[1] seeking to quiet title to, and for judicial partition of two contiguous properties (the Property). The vacant beachfront property, of which Appellant owns two parcels, is located in Mākena, Maui, Hawai'i.

As of September 10, 1999, Appellant owned approximately 95.778% of the Property which he had acquired over a period of seven years beginning in 1992. The remaining interests in the Property as of September 10, 1999, were held by Defendant–Appellee Paul Kapu (Kapu), who held a 4.0% interest, and Defendants–Appellees Chad and April Montalbo (the Montalbos), who each held a 0.111% interest.

On March 1, 1999, Appellant's motion to appoint a commissioner was granted. On January 4, 2000, the court ordered the Property to be sold at public auction in accordance with HRS § 668–14. Subsequently, a "Notice of Public Auction Pursuant to Court Order" (notice) was published in a newspaper on February 29, March 7, March 14, and March 21, 2000.[2]

On April 1, 2000, Kapu's 4% interest in the Property was purchased by Defendant–Appellee Joseph Fedele (Appellee) by quitclaim deed.

On April 5, 2000, the Commissioner conducted a public auction pursuant to HRS § 668–14. Appellee did not attend the auction. The highest bid at the auction was made by Appellant in the amount of $500,000.

On May 9, 2000, the Commissioner filed his Commissioner's Report.[3] The Commissioner recommended against confirmation of the sale to Appellant.

On May 30, 2000, Appellant filed a Motion for Order Confirming Sale. At the time the court had before it two valuations of the Property. Appellant's valuation appraised the Property at a fair market value of approximately $521,000, while the Commissioner's valuation appraised the Property at approximately $758,000.

Appellant was made aware that another party intended to bid $750,000 or more for the Property at the confirmation hearing on September 1, 2000. Appellant then filed a "Supplemental Memorandum Regarding Confirmation of Sale." In the memorandum, Appellant argued that the court's allowance of further bidding at the confirmation sale would result in a violation of HRS § 668–14.

---

1. The Honorable Joseph E. Cardoza presided.

2. The notice indicated the name, address and telephone number of the Commissioner, and the date, time, and place of sale. The notice described the Property as follows:

   Public auction by court-appointed Commissioner. NO UPSET PRICE. Property may be subject to liens of record. Sale subject to court confirmation. High bidder is required to provide ten percent (10%) of the bid price at close of auction, in cash, certified check or cashier's check. The balance of purchase price to be paid in cash, certified check or cashier's check upon court confirmation of sale and tender of document transferring title. . . .

The Commissioner also prepared a "Presentation Sheet" and distributed it to various potential bidders.

3. The report included an appraisal of the Property at $758,000 that the Commissioner had ordered from Ted Kasaji of Valley Isle Appraisal Company. The Kasaji appraisal reflected substantial "downward" adjustments for lack of water and access to the Property. The Commissioner noted that Appellant did not have these problems because he owned land immediately mauka of the property and, because he owned 95% of the Property, he "had an obvious advantage at the auction."

On October 6, 2000, Appellee filed a "Memorandum in Opposition to Motion for Order Confirming Sale and for Request for Attorneys' Fees and Costs." Attached to the opposition memorandum was Appellee's declaration stating that he was willing to bid $750,000 or more for the Property. The court did not reject Appellee's memorandum.

At the confirmation hearing, the court specifically found that Appellant's $500,000 bid was so grossly inadequate as to "shock the conscience of the court." In making this conclusion, the court also took into consideration the practice in the second circuit of allowing reopening of bidding at a confirmation hearing where the new bid is at least five percent higher than the highest original bid at auction. In light of those considerations, the court ruled that HRS § 668–14 did not preclude reopening of bidding, and reopened the auction at the confirmation hearing.

The bidding was conducted by the Commissioner and took place in the hallway outside the courtroom. A deposit requirement of ten percent was imposed. More than fifteen separate bids were made starting at $600,000. Appellant and Appellee engaged in competitive bidding and the auction was concluded in Appellant's favor at a final bid of $4,010,000. Upon conclusion of the auction the Commissioner reported the sale to the court with a recommendation that the sale be confirmed in Appellant's favor. Upon receipt of the Commissioner's report the court confirmed the sale.

On November 13, 2000, Appellant filed a "Motion for Amendment and/or Relief from Judgment." On January 26, 2001, the court entered an order denying Appellant's motion.

## II.

On appeal, Appellant argues that (1) HRS § 668–14 prescribes a specific procedure for the sale of the Property and the court altered that procedure, which Appellant argues it did not have the authority to do, and (2) Appellant's initial bid of $500,000 was not so grossly inadequate as to establish fraud and, as such, should have been confirmed. On the other hand, Appellee contends that (1) the court did not err in its application of HRS § 668–14 and (2) the court properly refused to confirm Appellant's initial $500,000 bid.

## III.

As to Appellant's first point, HRS § 668–14 provides that

> [a]ll sales of any property in a partition shall be made at public auction, after publication of notice with a brief description of the property to be sold, in at least one newspaper published in the State and having a general circulation in successive weeks, the first publication to be not less than thirty days prior to the date of sale. The notice otherwise shall be in accordance with the direction or order of the court. All sales shall be subject to the approval of and confirmation by the court, and shall be promptly and fully reported by the commissioners to the court.

Appellant argues that the court did not comply with the plain language of HRS § 668–14. He contends that HRS § 668–14 sets forth a strict procedure that requires all sales of property to be made at public auction. According to Appellant, in allowing the bidding to be reopened at the confirmation hearing, the court did not adhere to the statutory requirement of sale by public auction.

The interpretation of a statute is a question of law. Review is *de novo,* and the standard of review is right/wrong. *Kuhnert v. Allison,* 76 Hawai'i 39, 43, 868 P.2d 457, 461 (1994); *Franks v. City & County of Honolulu,* 74 Haw. 328, 334, 843 P.2d 668, 671 (1993). The court's primary obligation in construing a statute "is to ascertain and give effect to the intention of the legislature[,]" which "is to be obtained primarily from the language contained in the statute itself." *Franks,* 74 Haw. at 334, 843 P.2d at 671 (citing *In re Hawaiian Tel. Co.,* 61 Haw. 572, 577, 608 P.2d 383, 387 (1980).)

As written, HRS § 668–14 provides that all sales of property in partition are to be sold by public auction after specified notice of sale has been given to the public. It directs that all such sales . held by public auction are subject to the approval of and confirmation

by the court. The statute is silent, however, as to what procedure must be taken should the court deny approval of the Commissioner's report, and refuse confirmation of a partition sale.

■ In this regard, HRS § 1–16 (1993) instructs that "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." *Knauer v. Foote*, 101 Hawai'i 81, 91, 63 P.3d 389, 399 (2003). HRS § 668–1 indicates that the legislature did not intend to narrowly limit the scope of the circuit court's power by enacting HRS chapter 668. HRS § 668–1 provides:

> When two or more persons hold or are in possession of real property as joint tenants or as tenants in common, ... any one or more of such persons may bring an action in the circuit court of the circuit in which the property or some part thereof is situated, for a partition of the property, ... and for a sale of the same or a part thereof if it appears that a partition cannot be made without great prejudice to the owners. The several circuit courts shall have power, in any action for partition, *to proceed according to the usual practice of courts in equity in cases of partition, and according to this chapter in enlargement thereof.*

(Emphasis added.)

■ It is evident from HRS § 668–1 that the legislature intended that the provisions of HRS chapter 668 supplement the court's equitable power. The statute recognizes the power of the courts to act "according to the usual practice of courts in equity," and "according to this chapter in *enlargement* thereof." HRS § 668–1 (emphasis added). Traditionally, courts of equity exist for the purpose of "do[ing] equity" by ensuring that "no injustice is done to either party" involved. *Wodehouse v. Hawaiian Trust Co.*, 32 Haw. 835, 842 (1933). Inherent in the power to "do equity" is, of necessity, discretion to accomplish a just result under the circumstances. As indicated by HRS § 668–1, the legislature did not mean to restrict the powers granted to the circuit courts to only those enumerated in the specific provisions of HRS chapter 668. In enacting HRS § 668–1, the legislature thus contemplated that the courts would exercise equitable discretion in partition proceedings.

■ Thus, as in judicial sales following mortgage foreclosures, the circuit "court's authority to confirm a judicial sale is a matter of equitable discretion." *Brent v. Staveris*, 7 Haw.App. 40, 45, 741 P.2d 722, 726 (1987) (quoting *Hoge v. Kane II*, 4 Haw.App. 533, 540, 670 P.2d 36, 40 (1983)). In that vein, absent arbitrary action, the court has broad discretion regarding confirmation of judicial sales. *Rupe v. Oldenburg*, 184 Neb. 229, 166 N.W.2d 417, 420 (1969). In exercising its discretion, the "court should act in the interest of fairness and prudence, and with a just regard to the rights of all concerned and the stability of judicial sales." *Brent*, 7 Haw. App. at 45, 741 P.2d at 726 (quoting *Hoge*, 4 Haw.App. at 540, 670 P.2d at 40). The discretion of the court in a partition action then, will not be disturbed unless there is a clear finding of abuse. *Id.* "A trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant." *Indus. Mortgage Co. v. Smith*, 94 Hawai'i 502, 511, 17 P.3d 851, 859 (App.2001).

## IV.

■ In the present case, the court followed the procedural requirements set forth in HRS § 668–14. The notice requirements in HRS § 668–14 were complied with. A commissioner was appointed to hold the public auction on March 1, 1999, and shortly thereafter, pursuant to court order, a notice of publication was published in a newspaper for four consecutive weeks. The notice briefly described the Property, and informed the public that the Property would be sold at a public auction with the sale subject to court confirmation. The sale of the Property was made at a public auction held by the Commissioner. Thereafter, pursuant to the requirements of HRS § 668–14, the Commissioner submitted a report to the court on May 9, 2000. The report, however, recommended against confirmation of the sale to Appellant.

In *Brent*, a similar dispute arose regarding a judicial sale of real property involved in a mortgage foreclosure. In that case, two commissioners were assigned to hold a public auction following the receipt of inadequate bid prices at a private auction. *Brent*, 7 Haw.App. at 43, 741 P.2d at 725. At the public auction, the sale was concluded upon receipt of the highest bid. At that time, the co-commissioners indicated to all interested parties present at the auction, that despite the formal closing of the auction, offers would continue to be entertained until confirmation of the sale was made by the circuit court. *Id.* Prior to the confirmation hearing an interested party made an offer (advance bid) exceeding the highest bid at the public auction by $38,000. *Id.* at 43–44, 741 P.2d at 725. At the confirmation hearing, the judge ordered a reopening of the bidding in light of the new advance bid, and an auction was conducted in the courtroom. *Id.* at 44, 741 P.2d at 725.

Brent, like Appellant in the present case, argued on appeal that the circuit court had abused its discretion when it reopened bidding at the confirmation hearing. *Id.* at 45, 741 P.2d at 726. She asserted that reopening of the bidding would discourage prospective purchasers from bidding at public auctions because the sale would not be sustained. Although the Intermediate Court of Appeals (the ICA) agreed that an important general principle of judicial sales is the maintenance of "stability," the ICA determined that the lower court's decision to reopen bidding was not an abuse of discretion. *Id.* at 47, 741 P.2d at 727. The ICA decided that: 1) "In dealing with the problem of a conflict between the court's obligation to maintain the stability and purpose of the judicial sale and its duty to obtain the highest possible price ... a certain amount of judicial discretion is necessarily vested in the court to shield and promote justice under all circumstances[,]" *id.* at 45, 741 P.2d at 726 (citing *Rupe*, 166 N.W.2d at 420; 2) "[a] successful bidder at a public auction is not vested with any interest in the land until the sale has been confirmed by the court[,]" *id.* (citing *Levy v. Broadway–Carmen Bldg. Corp.*, 366 Ill. 279, 8 N.E.2d 671 (1937)); 3) "a bid advancing the purchase price and made before confirmation of the auction sale, which is not merely nominal but is substantial and material, may form the basis for the proper exercise of judicial discretion in directing a resale or reopening the bidding[,]" *id.* at 45–46, 741 P.2d at 726 (citing *Rupe*, 166 N.W.2d at 420); and 4) in effect, the commissioners left the auction open for more bids to be made up to the confirmation hearing and, in essence, the circuit court merely kept the auction going, *id.* at 46, 741 P.2d 722, 741 P.2d at 727.

■ Like considerations apply here. Appellee's advance purchase bid was "substantial and material." *Id.* "[A] bid ... made before confirmation ..., which ... is substantial and material, may form the basis for the proper exercise of judicial discretion in directing a resale or [in] reopening the bidding." *Id.* at 46–47, 741 P.2d at 726 (citing *Rupe*, 166 N.W.2d at 420; *accord Siekert v. Soester*, 144 Neb. 321, 13 N.W.2d 139 (1944)). Here, the advance bid price of $750,000 was an appreciable increase from the original bid of $500,000. At the confirmation hearing, more than fifteen bids were made with a starting offer of $600,000, a considerable increase from the highest bid at the first sale.

Second, the stability of the judicial sale at the public auction was not appreciably disturbed by opening the sale for rebidding because Appellant was not vested with any rights to the property prior to the confirmation of the judicial sale. This was made clear by the Notice of Sale which informed bidders the sale was subject to confirmation.

■ Third, reopening the bidding at the confirmation hearing ensured fairness to the minority owners involved. Appellee had obtained an ownership interest in a portion of the property at issue, and as such he was directly affected by the partition sale. Appellee had offered an advance bid well above that of the highest bid taken at public auction and proceeded to bid competitively with Appellant for ownership of the Property. A denial of his advance bid would have been unfair in light of his property interest. As noted by the Nebraska Supreme court in *Rupe*, a "partition suit often involves the sale

of interests of minors [4] in the real estate" and the court, as a result, is "duty bound to protect [the interests of those minors] by securing the highest possible price for the property." 166 N.W.2d at 420.

Fourth, as noted by the ICA in *Brent*, a republication of the notice of sale and a second public auction, as Appellant advocates, would not guarantee that greater interest in the property would be generated, or that a higher bid would be obtained. *Brent*, 7 Haw.App. at 46–47, 741 P.2d at 727. Rather, a second public auction might reduce the efficiency of the judicial sale process by increasing costs of the sale. *Id.*

### V.

The fact that, in *Brent*, the public auction was "in effect" continued into the confirmation hearing, is not determinative of the proper exercise of the court's equitable discretion under HRS § 668–1. While there is no evidence the Commissioner in this case announced that bids would continue to be accepted after the public auction,[5] as in *Brent*, all interested parties were allowed to bid at the public auction. The public had notice that any sale was still subject to confirmation by the court and that the court would hold a confirmation hearing at a specified date and time. Accordingly, a party interested in the property had notice that any further decision with regard to the sale would be taken at the confirmation hearing. Any party, then, had the opportunity to attend the confirmation hearing and to take whatever course the party believed appropriate as a result of the action determined by the court at the hearing. As noted in *Brent*, "the successful bidder at a public auction is not vested with any interest in the land until the sale has been confirmed by the court." 7 Haw.App. at 45, 741 P.2d at 726. Moreover, HRS § 668–14 on its face does not prohibit the court from reopening bidding at the confirmation hearing and accepting further bids. In this regard the authority of the court to

reopen bidding was not constrained by the statute.

In light of the foregoing, it cannot be concluded that the court "clearly exceed[ed] the bounds of reason or disregard[ed] rules or principles of law or practice to the substantial detriment of a party litigant." *Indus. Mortgage Co.*, 94 Hawai'i at 511, 17 P.3d at 859. Accordingly, we conclude that the court, having already complied with the specific procedural requirements set forth in HRS § 668–14, acted within its discretion under HRS § 668–1 in reopening public bidding at the confirmation hearing.

### VI.

#### A.

As to Appellant's second point on appeal, the court did not abuse its discretion when it refused to confirm the bid because the bid was "grossly inadequate." Here, Appellee, a 4% owner of the property, indicated that he would bid at least $750,000 or more for the Property. This bid was an appreciable increase from the original auction bid. As mentioned previously, a bid advancing the purchase price that is substantial and material, may form the basis for the proper exercise of judicial discretion in reopening the bidding. *Brent*, 7 Haw.App. at 45–46, 741 P.2d at 726. In *Brent*, the ICA stated that an 11% increase in price was "a substantial increase over the [auction] bid, and ... it might well have been an abuse of discretion for the lower court to have [confirmed the bid.]" *Id.* at 46, 741 P.2d at 726. In this case, the advance bid of $750,000 was 50% in excess of the auction bid of $500,000. The court's rejection of the public auction price was plainly within its discretion. *Cf. Indus. Mortgage Co.*, 94 Hawai'i at 511, 17 P.3d at 860 (holding that trial court did not abuse its discretion in confirming a sale because no prospective bidders made an appearance although they were waiting to make a bid).

---

4. It appears from the context of the case that the court uses the term "minors" in reference to the "minority interests" in partition cases.

5. However, at the October 6, 2000 confirmation hearing, the judge stated that it was "inclined to

rule that [HRS § ] 668–14 does not preclude the reopening of bidding [because i]n [its] view, what would occur in terms of *reopening the auction would in fact be a continuation of a public auction.*" (Emphasis added.)

 

## B.

 Appellant argues that his bid should have been confirmed because it "was not so grossly inadequate as to establish fraud." He cites to 59A Am.Jur.2d *Partition* § 210 for the proposition that "[i]nadequacy of price is not itself, sufficient ground upon which to set aside a partition sale, unless it is so grossly inadequate as to establish fraud."

An early case in our jurisdiction seemed to equate the "shock the conscience" standard of review of judicial sales with fraud. *See Smith v. Steamship "City of Columbia,"* 11 Haw. 709, 710 (1899).[6] Also, in *City of Columbia,* this court held that "a judicial sale shall be confirmed unless the price obtained is so grossly inadequate to the value of the property sold as to shock the conscience of the court and be presumptive evidence of fraud[.]" *Id.* at 710. After *City of Columbia,* in *Smith v. Pac. Heights Ry.,* 17 Haw. 96 (1905), this court differentiated between gross inadequacy of price and fraud as grounds for rejecting an auction price. It was said that "it is well recognized that a sale may be set aside where the inadequacy [of price] is so gross as to shock the conscience, *or* raise a presumption of fraud, or unfairness, or mistake[.]" *Id.* at 102 (emphasis added).

Following *Pacific Heights,* this court in *Wodehouse,* noting the fact that prices had dramatically increased since the end of the depression, looked at the value of the property "at the time of foreclosure and not the value at the time of the execution of the mortgage" in order to determine if the bid offered was "so grossly inadequate as to shock the conscience." 32 Haw. at 852. This court did not equate fraud with a "grossly

inadequate" bid but, rather, explained that "the court cannot relieve one party to the contract without violating the contractual right of the other[; u]nless there be fraud or misconduct, a *mere* inadequacy of price will not be sufficient to vacate a sale." *Id.* at 849 (emphasis added).

More recently, our cases have not retained the requirement that gross inadequacy of the price must amount to fraud. *See Hoge,* 4 Haw.App. at 540, 670 P.2d at 40 (clarifying that "[i]f the highest bid is so grossly inadequate as to shock the conscience, the court should refuse to confirm"); *Indus. Mortgage Co.,* 94 Hawai'i at 510, 17 P.3d at 859 (reaffirming that a court should refuse to confirm a grossly inadequate bid which shocks the conscience). Therefore, the gross inadequacy of an auction price may be a basis for a court's order denying confirmation of a sale without a showing that the inadequacy would amount to fraud.

## VII.

Under the circumstances, the court acted within its authority under HRS chapter 668 and, as such, did not abuse its discretion. For the foregoing reasons, the court's November 3, 2000 "Order Confirming Petition Sale" and its January 26, 2001 "Order Denying Plaintiff's Motion for Amendment of and/or Relief From Judgment" are affirmed.

---

**6.** Other Hawai'i cases have applied the "shock the conscience" standard to determine whether a private sale of property was equitable. *See Berger v. Booth,* 13 Haw. 291, 295–96 (1901) ("A sale . . . cannot be set aside for mere inadequacy of consideration; it is only where the price paid is so grossly inadequate as to shock the conscience and raise a stronger presumption of fraud, that equity will relieve, the ground of relief being, not the inadequacy, but the fraud evidenced thereby."); *Harbottle v. T.W. Rawlins,* 11 Haw. 105 (1897) (holding that price for conveyance of land did not shock the conscience); *S. Kailaa v. S.M. Kaaukai,* 7 Haw. 653 (1889) (holding that a loan of twenty dollars to pay for a coat secured by property worth $800 was a mortgage and subject to shock the conscience standard).