Joseph R. **ALVERNES**, Plaintiff-Appellant,

v.

**SMALL BUSINESS ADMINISTRATION**
et al., Defendants-Appellees.

No. 72–1271.

United States Court of Appeals, First Circuit.

Argued Nov. 8, 1972.

Decided Dec. 19, 1972.

Laurent L. Rousseau, Newport, R. I., with whom Francis J. Boyle and Moore, Virgadamo, Boyle & Lynch, Newport, R. I., were on brief, for appellant.

Brian G. Bardoff, Newport, R. I., with whom Sheffield & Harvey, Newport, R. I., was on brief, for appellees, Israel M. Resnikoff and David T. Chase.

Lincoln C. Almond, U. S. Atty., and Everett C. Sammartino, Asst. U. S. Atty., on brief for appellee, Small Business Administration.

Before ALDRICH, McENTEE and CAMPBELL, Circuit Judges.

ALDRICH, Senior Judge.

Simplifying somewhat the facts, plaintiff-appellant was the owner of a parcel of land on which he had granted a first mortgage to the Small Business Administration, having a balance due of $66,000, and a second mortgage to one Aquidneck, with a balance due of $6,800. Plaintiff defaulted on the payments and the first mortgagee gave notice of a foreclosure sale. Prior to the sale, defendants Resnikoff and Chase, hereinafter defendants,[1] being desirous of purchasing at the sale, agreed with Aquidneck to take care of the second mortgage in return for Aquidneck's agreement not to bid. Aquidneck abstained at the sale, and defendants bid in the property for $50,000.

Plaintiff, alleging that the agreement was unlawful, sought equitable relief to void the sale, or damages. The district court dismissed the bill, having, after a trial, determined that the parties to the agreement were legitimately protecting their interests in the property and that there was nothing fraudulent in the foreclosure sale. In addition, it found that the agreement had not damaged plaintiff, since the evidence showed that the purchase price was at least equal to actual fair value. The parties dispute the relevance, as well as the correctness, of the finding as to value. We hold it irrelevant, and for present purposes assume it to have been inadequate.

Plaintiff asserts that the agreement between defendants and Aquidneck stifled free competitive bidding at the sale, thus depressing the price he might have received. For this he cites Fenner v. Tucker, 1860, 6 R.I. 551. There the court held that for a bidder to buy off a person who would have been interested in making a substantial bid, collusively restrained competition and rendered the sale voidable. We agree with that case, and would have followed it quite apart from our obligation to do so under Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The case at bar, however, has distinguishing features. In *Fenner,* the prospective bidder was a member of the general public who was interested in the property itself; in the present case, as warrantably found by the trial court, Aquidneck, the bought-off bidder, was a mortgage-holder on the property who was interested not in the property but only in protecting its mortgage interest. This finding, and this finding alone, distinguishes the case from *Fenner.* Had Aquidneck received a bonus for its promise not to bid, *Fenner* would have been directly applicable. However, since it did not, we have a special situation which does not respond to the *Fenner* analysis. *Cf.* Saunders v. Berrong, 1966, Miss., 183 So.2d 637, 640–642.

One whose interest is in satisfying his second mortgage rather than in acquiring the property, will be likely to bid at a foreclosure sale only under certain circumstances. In the first place, he will not bid more than the amount of the

---

1. The S.B.A. was originally a defendant, also, but its dismissal was so clearly correct that no discussion is called for.

first mortgage plus his own. Should the bidding rise above this amount he would have no reason to overbid, but, rather, every reason to keep silent and receive his money. In no way, in other words, did Aquidneck's agreement with defendants restrain anyone, itself included, from bidding above the liens. This, then, must be the ceiling on plaintiff's claim. On the other hand, to protect his mortgage, and particularly if the mortgagor is not thought good for the debt, a second mortgagee who sees a bid approaching what is due on the first mortgage may find it worth his while to bid up to the amount of his own in order to protect his security, providing, of course, that he considers the property to be worth that price. Thus in our case Aquidneck, absent the agreement, might conceivably have kept the bidding open to $72,800, or $22,800 more than plaintiff received.

Because at the oral argument we were not clear as to the nature of the agreement, we inquired whether the fact that it caused Aquidneck not to bid and at the same time left plaintiff liable on the note secured by the second mortgage affected plaintiff's claim for relief. Defendants replied that they had no intention, as putative assignees, of proceeding against plaintiff on the note. Since they have backed this disclaimer by filing a stipulation in effect discharging plaintiff of this $6,800 obligation, this aspect of the case, valid or otherwise, has disappeared.

■ Although the stipulation increases plaintiff's effective recovery on the

sale from $50,000 to $56,800, there remains the question whether he has any complaint regarding the additional $16,000, representing the difference between the bid price and the full amount due on the first mortgage, which Aquidneck might conceivably have been willing to bid absent the agreement. While we recognize the possibility that plaintiff might have been injured by Aquidneck's loss of a motive to bid, we hold that plaintiff has no valid complaint.

Since the consideration for the agreement was the amount of the second mortgage, and since Aquidneck was interested only in protecting itself, the agreement in total effect was a purchase of the mortgage.[2] The undertaking not to bid merely defined the agreement, and was superfluous to Aquidneck, since in the light of the court's finding as to the extent of its interest, any motive it might have had to bid against defendants vanished upon receipt of defendants' promise to pay. To hold that plaintiff could object to this would be to allow the mortgagor to restrict his own mortgagee's right to collect its debt. Having given the mortgage, and being in default, it cannot lie in plaintiff's mouth to say that the mortgagee must be restrained in its attempt to recoup, and, particularly, must stand ready to contribute to him as mortgagor. In former days younger daughters had to see that their elder sister was married first, but we do not accept the thought that a second mortgagee is obliged to assist in the satisfaction of the first mortgage before it can realize on its own.

Affirmed.

---

2. We cannot but remark that it would have been a much cleaner situation, and perhaps obviated this litigation, had defendants, in view of their state of mind, become assignees of record of the second mortgage prior to the foreclosure sale.