WILLIAM R. HOGE, JR., Plaintiff-Appellee, *v.* FRED KANE and STEVEN CHARLES KANE, Defendants-Appellants, and HONOLULU FEDERAL SAVINGS AND LOAN ASSOCIATION, JOHN DOES 1-5, JANE DOES 1-5, DOE CORPORATIONS 1-5, DOE PARTNERSHIPS 1-5, DOE ENTITIES 1-5, and DOE GOVERNMENTAL UNITS 1-5, Defendants

NO. 8993

(CIVIL NO. 2486)

SEPTEMBER 22, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

In this agreement of sale (AOS) foreclosure case, the vendees under the AOS appeal the confirmation of the auction sale and the deficiency judgment. We reverse and remand.

The issues and our answers are:

I. Did the lower court abuse its discretion in confirming the sale at the auction bid price of $50,000 and computing the deficiency judgment based on that price? Yes.

II. Did the lower court err in requiring the vendees under the AOS to pay interest and condominium expenses (maintenance fees, real property taxes, and lease rents) under the AOS from March 17, 1982 (the date the sale was confirmed) through April 30, 1982 (a date of unknown significance)? Yes.

By AOS dated September 8, 1979, defendants-appellants Fred and Steven Kane (Kanes) purchased apartment no. J-203, Ponokai condominium, Kapaa, Kauai, from plaintiff-appellee William R. Hoge, Jr. (Hoge), for $130,000 free and clear of Hoge's mortgages. The Kanes paid $24,000 down and agreed to pay monthly installments of interest only at the rate of 11.5% per annum and a balloon payment of the entire balance on or before November 23, 1981.

The Kanes made the required installment payments through April 23, 1981 but thereafter defaulted. Upon the Kanes' default, the AOS permitted Hoge to accelerate the entire debt and seek foreclosure as if the AOS was a mortgage. When Hoge filed this action to foreclose the AOS, he owed $61,151.46 on a first mortgage loan to Honolulu Federal Savings and Loan Association (Honfed) and $21,601.29 on a second mortgage loan to Finance Factors, Limited (FF). Since

both the Honfed and FF mortgages had priority over the AOS, Hoge could not force either of them to their recovery. HRS § 667-3 (1976). Moreover, HRS § 667-2 (1976) required Hoge to make them parties to the action. Although FF was never made a party, its attorney participated in the case.

On August 10, 1981, the lower court issued a decree of foreclosure appointing a commissioner and ordering a sale by public auction which stated in relevant part:

2. The Agreement of Sale held by Plaintiff shall be foreclosed as prayed for in the Complaint; Defendants Kane, however, will be allowed to pay all amounts provided for in, and to purchase the property pursuant to, said Agreement of Sale until the confirmation of the Commissioner's sale.

* * *

4. * * * [T]he sale to be free and clear of any and all claims, rights, title and interest of any person whatsoever; with the terms of sale to be as follows: 10% of the purchase price to be payable at the fall of the hammer, with the balance payable concurrently with the delivery of the documents transferring title to the purchaser, and the sale to be subject to confirmation by this Court. Plaintiff may be a purchaser at the sale.

* * *

As we noted in *Hoge v. Kane I,* 4 Haw. App. 246, 663 P.2d 645 (1983), the August 10, 1981 decree and order is a final order for appeal purposes.

The commissioner set the terms of sale at public auction as follows:

Terms of Sale: The property to be sold at the highest price obtainable, with no upset price; 10% of the bid price in cash, certified or cashier's check drawn on a bank doing business in Hawaii, shall be paid at the fall of the hammer and the balance upon confirmation of sale by the Fifth Circuit Court; the sale is subject to and shall not be final until approved by said Court.

Prior to the auction, Hoge wrote a letter to the commissioner as follows:

By this letter, I hereby enter an offer for the purchase of the property involved in the above noted foreclosure, of $50,000.00 if I am the only bidder. If there are other bidders, I also authorize you to increase the bid in increments of $100, up to, and including a maximum bid of $89,794.02 (which is based on $7,041.27, plus the outstanding mortgages), to meet other bids. Other commitments prohibit my attending the auction in person, and thus I appreciate your accepting this bid to be included among any other bids received at the time of the auction, on October 8, 1981.

As my initial deposit for this bid, I hereby submit my position as mortgagor in the two mortgages secured by the property, to Honolulu Federal and Loan Association and Finance Factors. I understand that this would be an acceptable deposit with you inasmuch as I am the mortgagor under these mortgages and the seller on the agreement of sale being foreclosed.

At the auction there were no other bidders so the commissioner accepted Hoge's bid of $50,000.

In this report, the commissioner stated in relevant part as follows:

Although the sale price of $50,000.00 does not appear to cover all of the expenses of the sale, the taxes due thereon, the delinquent maintenance fees, as well as the interest of the first and second mortgage holders, nevertheless, it is requested that the sale price of $50,000.00 be approved inasmuch as Plaintiff's attorney has made it clear to your commissioner that same has reached an agreement with the mortgage holders to resolve their interest in the property, and that no distribution will be required from the sale to said interest holders.

Thus, it appears that Honfed and FF allowed the apartment to be sold free and clear of their mortgages and did not bid at the auction in consideration of a promise by Hoge, the mortgagor, that either he would be the successful bidder, in which case he would bring the first current and pay off the second, or the successful bid would be greater than $89,794.02, in which case there would be sufficient proceeds to fully satisfy both.

To Hoge's motion for confirmation of the sale at $50,000, the Kanes responded "that the Commissioner's sale herein be set aside and that another sale be ordered with an upset price of $89,794.02; or in the alternative, that the sale to [Hoge] be confirmed in the amount of $89,794.02." In other words, the Kanes were objecting to the price because of its effect on the inevitable deficiency judgment.

On November 20, 1981, the lower court orally approved the sale at $89,794.02. Thereafter, Hoge advised the court that he was unwilling to purchase the apartment for $89,794.02 and asked the court to reconsider. In a memorandum he stated, "the fair market value of the property must be established at the $50,000. bid submitted by [Hoge], who was to take the property subject to the mortgages." (Footnote omitted.)

The $89,794.02 figure appears to represent the sum of the foreclosure expenses plus the two mortgages. If Hoge agreed to purchase the apartment for $50,000 subject to the two mortgages, the total consideration would have been $132,752.75, not $89,794.02.

In an affidavit filed on January 21, 1982, the commissioner stated in relevant part as follows:

4. That your Affiant accepted that bid, as being the only bid for the property, conditioned upon the Plaintiff's taking the property subject to two outstanding mortgages.

\* \* \*

6. That due to the current economy, your Affiant believes that an additional public auction would be futile.

On March 17, 1982, the court amended its prior oral order, approved the sale to Hoge at $50,000 and authorized disbursement in the following order of priority:

| | | | |
|---|---|---|---|
| Lease Rent | 375.00 | + | proration |
| Real property tax | 1,451.43 | + | proration |
| Maintenance fee | 593.15 | + | proration |
| Late fee | 20.00 | | |
| Commissioner's expenses | 223.43 | | |
| Commissioner's fee | 1,100.00 | | |
| Hoge's attorney's fees/costs | 3,920.52 | | |

Hoge:

| | | | |
|---|---|---|---|
| principal balance | 106,000.00 | | |
| interest at 11.5% from 4/24/81 through 1/31/82 | 9,379.52 | + | 33.86 per diem interest from 2/1/82 through date of payment |

In relevant part, the court further ordered:

2. * * * the Commissioner is hereby ordered and directed to make good and sufficient conveyance [of the apartment] to said William R. Hoge, Jr., or his nominee.

\* \* \*

9. William R. Hoge, Jr., shall bring current the underlying mortgage with Honolulu Federal Savings & Loan Association, and pay off the mortgage with Finance Factors, together with interest, late charges and attorney's fees, and having done so, shall be given credit for such amounts against the purchase price due the Commissioner.

10. Defendants Fred Kane and Steven Charles Kane, and any and all other persons claiming any interest in and to said property by and through or under said Defendants shall be forever barred and foreclosed of and from all right, title and interest in claims at law and equity in and to the said real property and every part thereof.

On April 28, 1982, Hoge asked for a deficiency judgment of $77,103.27 based on the figures noted in the March 17, 1982 order and the following:

| | |
|---|---|
| Additional maintenance fees | 593.15 |
| Additional lease rent | 375.00 |
| Additional late fees | 30.00 |
| Additional legal fees | 28.53 |
| Per diem interest from 2/1/82 through 4/30/82 | 3,013.54 |

On August 10, 1982, the court filed a $77,103.27 deficiency judgment. The numbers do not indicate that any credit was given to Hoge for payments on the mortgages.

There is no evidence in the record that the commissioner issued a deed to Hoge. We surmise that since he was the purchaser, Hoge was satisfied with the cancellation of the Kanes' interest and that the apartment was not conveyed to Hoge, as auction purchaser, free and clear of the mortgages.

As previously noted, the Kanes are complaining about the auction price and the deficiency judgment. They want us to order a new sale or, if Hoge has disposed of the property during the pendency of the appeal, a determination of fair market value at the time of the commissioner's sale and a redetermination of the deficiency. Moreover, they want Hoge's liability for interest and condominium expenses terminated as of the date the AOS terminated, which they contend is either the date the sale was confirmed (March 17, 1982) or the date the commissioner's deed was recorded (not in the record).

## I.

Although we disfavor such noncompliance with the court's instructions, we find no reversible error in the commissioner's failure to conduct the sale in accordance with the lower court's August 10, 1981 decree and the commissioner's published notice of public auction. The purchaser was supposed to pay 10% of the purchase price at the fall of the hammer. Hoge did not do so. Instead, he was allowed to "submit [his] position as mortgagor in the two mortgages secured by the property[.]" Since the sale was to be free and clear of Hoge's AOS and the mortgages, we find no value in Hoge's position as seller-mortgagor. Consequently, we conclude that his bid was accepted notwithstanding his failure to make the required deposit.

We look upon such noncompliance with the court's instructions and such deviation from the commissioner's notice of sale with disfavor. If the decree of foreclosure and the notice of sale need to be amended, such action should be taken prior to the sale. However, since the commissioner is an agent acting in the court's behalf, the lower court has the discretionary power to confirm the sale thereby curing the irregularity. *Koester v. Koester,* 543 S.W.2d 51 (Mo. App. 1976); *Confederate Point Partnership Ltd. v. Schatten,* 278 So.2d 661 (Fla. App. 1973). Since the Kanes have not demonstrated any injury to them from this irregularity, we find the lower court did not abuse its discretion when it confirmed the sale. *First Federal v. Zequeira,* 288 F.Supp. 384 (1968); *Quinn v. Jian,* 235 F.Supp.

975 (1964); *Reynolds v. Harrison,* 635 S.W.2d 845 (Tex. App. 1982); *Leeser & Son v. Seymour,* 35 Cal. Rptr. 2d 474, 218 P.2d 536 (1950).

Further, there is no problem in the fact that Hoge made pre-auction arrangements with his two mortgagees who might otherwise have been interested in the auction and the terms thereof. Generally, "any action on the part of any persons which prevents a free, fair, and open sale or chills the sale is contrary to public policy and should be set aside." *Koester, supra,* 543 S.W.2d at 54. However, as long as no bonus is involved a bidder may agree to satisfy an existing mortgage which the sale is terminating even if he thereby induces the mortgagee not to bid. *Alvernes v. Small Business Administration,* 470 F.2d 954 (1st Cir. 1972). Consequently, even if Hoge, by his arrangements with his mortgagees, induced them not to bid, he did nothing improper.

The problem in this case is that the commissioner and the court mistakenly believed that, in the words of Hoge's counsel, "[T]he $50,000.00 bid represents the value of the equity in the property, subject to two (2) senior mortgages, and not the value of the unencumbered property."

The $50,000 cannot represent the value of the vendee's equity in the property because the commissioner sold the apartment unencumbered. Furthermore, although Hoge, the bidder, who also was the plaintiff, was personally obligated on two loans which had been secured by mortgages on the apartment, it is not true that he purchased the apartment subject to the mortgages. The sale would have terminated the mortgages. Hoge's bid was for the value of the apartment free and clear of the mortgages, and he was mistaken if he thought otherwise.

The lower court's authority to confirm a judicial sale is a matter of equitable discretion. If the highest bid is so grossly inadequate as to shock the conscience, the court should refuse to confirm. *Wodehouse v. Hawaiian Trust Co., Ltd.,* 32 Haw. 835, 852 (1933). In exercising its discretion, the court should act in the interest of fairness and prudence and with just regard for the rights of all concerned and the stability of judicial sales. *Kleeb v. Kleeb,* 210 Neb. 637, 316 N.W.2d 583 (1982). Here the Kanes were entitled to an examination of the adequacy of the price based on the fact that the bid was for the apartment free

and clear of all mortgages and not subject to them. However, based on the commissioner's recommendation the court approved the price under the mistaken belief that it was for the apartment subject to the mortgages. We do not know what it would have done had it realized that the price was for the apartment free and clear of the mortgages.

Accordingly, we require the lower court in the exercise of its equitable discretion to decide whether the $50,000 bid for the apartment free and clear of the mortgages was grossly inadequate and to proceed from there.

II.

As is typical in foreclosure cases, the lower court limited the Kanes' right to cure the default and stop the foreclosure up to the day of the confirmation of the sale. This is because the confirmation of a sale is the equivalent of a valid contract of sale, *First Trust Co. of Hilo Ltd. v. Reinhardt,* 3 Haw. App. 589, 655 P.2d 891 (1982).

In this case, the confirmation order required the commissioner "out of the . . . $50,000" to "prorate and pay all real property taxes, maintenance fees and lease rents . . . plus interest through the date of payment[.]" Consequently, Hoge, as purchaser at the judicial sale, is not liable for any interest or condominium expenses which accrue prior to closing.

Obviously, the commissioner and the court are not liable for such items either. That leaves only the parties to the AOS. As between the parties the AOS provides in relevant part as follows: "4.2.6 Seller's Election to Treat Agreement as Mortgage * * * The proceeds from any such foreclosure sale shall be applied as follows: * * * Third, to the payment of the balance of the said purchase price and interest and all other sums owing to the Seller hereunder then remaining unpaid[.]"

Since there are no proceeds from the foreclosure sale until closing, the above quoted provision of the AOS means that the Kanes agreed and are thereby obligated to pay such items until the closing of the foreclosure sale which should occur within a reasonable time after the confirmation. That obligation survived the foreclosure of their claim to the apartment under the AOS.

In this case the lower court ordered the Kanes to pay for such items until April 30, 1982, a date of unknown significance. Not knowing when the closing occurred, if ever, or when it reasonably should have occurred, we are unable to say whether that order constituted error. This issue should be dealt with on remand.

Reversed and remanded for further proceedings consistent with this opinion.

*Donald H. Wilson* on the briefs for appellants.
*James E. Ross* on the briefs for appellee.