**Electronically Filed
Supreme Court
SCWC-11-0000444
10-JUL-2013
10:06 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
solely as nominee, Respondent/Plaintiff-Appellee,

vs.

SHARON KEHAULANI WISE and BLOSSOM ILIMA NIHIPALI,
Petitioners/Defendants-Appellants,

and

EWA BY GENTRY COMMUNITY ASSOCIATION,
Respondent/Defendant-Appellee.

SCWC-11-0000444

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000444; CIVIL NO. 09-1-1064)

July 10, 2013

NAKAYAMA, ACTING C.J., ACOBA, MCKENNA, AND POLLACK, JJ., AND
CIRCUIT JUDGE NISHIMURA, IN PLACE OF RECKTENWALD, C.J., RECUSED

<u>AMENDED OPINION OF THE COURT BY ACOBA, J.</u>

We hold that Petitioners/Defendants-Appellants Sharon

Kehaulani Wise (Wise) and Blossom Ilima Nihipali (Nihipali)

(collectively Petitioners), mortgagors under the mortgage herein, are precluded from raising the standing of Respondent/Plaintiff-Appellee Mortgage Electronic Registration Systems, Inc. (MERS, or Respondent) to bring the foreclosure action herein inasmuch as (1) a standing objection is not "unique" to a confirmation of sale proceeding, see Security Pacific Mortg. Corp. v. Miller, 71 Haw. 65, 70, 783 P.2d 855, 858 (1989), from which Petitioners appeal, and (2) Petitioners' failure to appeal the foreclosure judgment barred challenges to Respondent's standing under the doctrine of res judicata. In consonance with these holdings, the April 29, 2011 judgment of the Circuit Court of the First Circuit (the court)[1], and the January 2, 2013 judgment of the Intermediate Court of Appeals (ICA) are affirmed, but for the reasons set forth herein.

I.

On September 8, 2006, Petitioners executed a promissory note (Note) secured on a mortgage (Mortgage) on their residence located in Ewa Beach, Hawaiʻi, in the amount of $416,250.00 from Flexpoint Funding Corporation (Flexpoint) a California corporation. The Mortgage stated that it "secured to [Flexpoint]," inter alia, "the repayment of the loan."

---

[1]    The Honorable Bert I. Ayabe presided.

2

Respondent was listed in the mortgage as "mortgagee"[2] and "nominee."[3]  The Mortgage provided that "[Respondent] holds only legal title to the interests granted by [Petitioners] in this Mortgage; but, if necessary to comply with law or custom, [Respondent], (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the Property."

On May 6, 2009, Respondent, as Plaintiff and acting "solely as nominee," filed a Complaint against Petitioners, alleging that Petitioners had failed to make payments pursuant to the terms of the Note and that Respondent sought foreclosure of the mortgage, sale of the property, and a deficiency judgment if the proceeds of the sale did not satisfy Petitioners' debt. Copies of the Note and Mortgage were attached to the Complaint.

On July 8, 2009, Respondent filed a Motion for Summary Judgment as Against All Defendants and for Interlocutory Decree of Foreclosure.  Respondent attached a Declaration of Barbara

---

[2]    A "mortgagee" is defined as "[o]ne to whom property is mortgaged; the mortgage creditor, or lender." Black's Law Dictionary 1104 (9th ed. 2009).  Because Flexpoint was the "creditor or lender," it does not appear that Respondent was the "mortgagee." See Mortgage Electronic Registration Systems, Inc. v. Saunders, 2 A. 3d 289, 295-96 (Me. 2010).

[3]    "Nominee" is defined as "[a] person designed to act in place of another, usu[ally] in a very limited way," or "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for he benefit of others." Black's Law Dictionary 1076 (8th ed. 2004).

3

Huidmer, an "officer, collection officer, or employee," of JP Morgan Chase Bank National Association (Chase), a "servicing agent" for Respondent. The Declaration stated that Chase was in possession of the Note and that Petitioners had failed to make payments "as required" under the Note. The Note, Mortgage, and records establishing that Petitioners had failed to make timely payments were attached as exhibits to the motion.

On July 13, 2009, Respondent secured a clerk's entry of default against Petitioners for failing to respond to the Complaint.

On July 27, 2009, Wise, proceeding pro se, filed Petitioners' Answer to Respondent's Motion for Summary Judgment as Against All Defendants and for Interlocutory Decree of Foreclosure ("Answer"),[4] stating, inter alia, that Respondent lacked standing to file the Complaint.

On August 5, 2009, a hearing was held on Respondent's Motion for Summary Judgment. Wise was apparently present at the hearing. A transcript of the hearing is not a part of the record.

On May 12, 2010, the court granted Respondent's Motion for Summary Judgment and filed Findings of Fact, Conclusions of

---

[4] Wise titled the "Answer" as an "Answer to Plaintiff's Motion for Summary Judgment." However, the substance of the Answer, which appears to deny allegations stated in the complaint, appears to be an Answer to the complaint. In its reply before this court, Petitioners characterized this document as an "answer to the Complaint."

Law (conclusions), and an Order Granting Motion for Summary Judgment as Against All Defendants and for Interlocutory Decree of Foreclosure. The court's conclusions provided, inter alia, that "[Respondent] is entitled to have its first mortgage foreclosed upon the Mortgaged Property and to have the property sold in a manner subscribed by law." The Order stated that the mortgage "shall be and is hereby foreclosed as prayed, and the Mortgaged Property shall be sold at public auction . . . . The sale shall not be final until approved and confirmed by the court." A foreclosure judgment was also entered on May 12 and incorporated the court's order.

The ultimate time to appeal the foreclosure judgment expired on July 12, 2010, assuming Petitioners would have sought an extension of time to appeal. See Hawaiʻi Rules of Appellate Procedure Rule 4 (stating that a notice of appeal "shall be filed within 30 days of the judgment" and that an extension may be obtained but that "no such extension shall exceed 30 days past the prescribed time"). Petitioners did not appeal.

On September 23, 2010, the commissioner issued his report stating that Petitioners' property was sold to Respondent for $329,986.80. On the same day, Respondent filed a Motion for Confirmation of Sale, for Writ of Possession and for Disposal of Personal Property (Motion for Confirmation). The Motion for Confirmation was heard on October 14, 2010. At the hearing,

5

Petitioners apparently "objected to confirmation on the grounds that Respondent was acting as a nominee for an undisclosed principal and had no standing to foreclose in the first place." The hearing on the Motion for Confirmation was continued to March 10, 2011.

On February 8, 2011, Respondent filed an Amended Notice of Hearing of its Motion for Confirmation (Amended Motion). Respondent attached to the Amended Motion a Declaration (Mikell Declaration) from a Lora A. Mikell, "Senior Lead Operations Specialist," who was also with Chase.  The Mikell Declaration stated that Chase "as holder of the [N]ote and [M]ortgage securing the [N]ote, confirms the actions taken to date," and "specifically authorized [Respondent] . . . to bring and to continue proceeding in this foreclosure action and any related legal action in connection with the [N]ote and the [M]ortgage." The court interpreted this statement as "ratification" under Hawaiʻi Rules of Civil Procedure (HRCP) Rule 17.[5]  Neither party

---

[5]     HRCP Rule 17(a) provide in relevant part as follows:

(a) Real party in interest. <u>Every action shall be prosecuted in the name of the real party in interest</u>.  An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in its own name without joining with it the party for whose benefit the action is brought.  No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for <u>ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such</u>

(continued...)

has challenged this interpretation.

Copies of the Note and Mortgage were attached to the Declaration. Appended to a copy of the Note was an endorsement transferring the Mortgage from Flexpoint to Washington Mutual Bank, which was entitled an "allonge,[6]" and an endorsement in blank[7] signed by a Robin B. Tango, a Vice President at Washington Mutual Bank. The Declaration explained that the Note and a copy of the Mortgage had been "kept by Chase in the ordinary course of business under [the declarant's] custody and control" and that the Note contained endorsements.

Petitioners' counsel filed an Opposition to Respondent's Amended Motion on March 3, 2011, challenging Respondent's standing to foreclose and Chase's ability to retroactively ratify Respondent's standing pursuant to HRCP Rule

---

[5](...continued)
> ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Id. (emphases added).

[6] An "allonge" is defined as "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." Black's Law Dictionary 88 (9th ed. 2009).

[7] Hawaiʻi Revised Statutes (H.R.S.) § 490:3-205(b) provides as follows:

> (b) If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to the bearer and may be negotiated by transfer of possession alone until specially indorsed.

Id. (emphasis added).

17. Petitioners also asserted that Chase could not establish that "the underlying promissory note was assigned from [Flexpoint] by allonge to [Washington Mutual] and then assigned in blank by [Washington Mutual]" because, inter alia, the Mikell Declaration "fails to provide any foundation for his assertions as to the actions and the record keeping of either MERS or Washington Mutual Bank, which he purports nevertheless to testify about."

On March 7, 2011, Respondent filed a reply memorandum, arguing that Respondent had standing to foreclose, that Chase's ratification cured any standing defect, and that the endorsement in blank attached to the Note rendered Chase the holder of the Note and Mortgage.

On March 10, 2011, Petitioners filed a Motion to Set Aside Clerk's Entry of Defaults pursuant to HRCP Rule 55(c).[8] In a Declaration of Counsel attached to the motion to set aside defaults, Petitioners' counsel stated that "the summary judgment in this case was clearly procured by false representations to [the] court under oath, as a result of which [Respondent] lacks standing to proceed in this case, and [the] court consequently

---

[8]     HRCP Rule 55(c) provides as follows:

    (c) Setting Aside Default. For good cause shown the court
    may set aside an entry of default and, if a judgment by
    default has been entered, may likewise set it aside in
    accordance with Rule 60(b).

8

lacks jurisdiction to confirm the sale." The declaration of counsel incorporated by reference the March 3, 2011 opposition memorandum, which was attached as an exhibit.

On April 29, 2011, the court made the following findings in its Order Confirming Sale.[9]

1. Although the Court acknowledges [Petitioners'] arguments regarding [Respondent's] lack of standing, Haw. R. Civ. P. 17(a) allows for ratification of commencement of the action by the real party in interest. The real party in interest, JP Morgan Chase Bank, National Association ("Chase"), has confirmed the actions taken to date and has authorized [Respondent] to bring and to continue proceeding in this foreclosure action. Therefore, Chase's ratification has effectively corrected any issue regarding [Respondent's] lack of standing and Chase has agreed to be bound for the decision of this Court, which eliminates any risk of multiple liability.

2. In addition, Chase is the holder of the note, with both the endorsement from Flexpoint Funding Corporation in favor of Washington Mutual Bank, and the blank endorsement signed by Washington Mutual Bank. In accordance with Hawaiʻi Revised Statutes Section 490:3-205(b), when an instrument is indorsed in blank, it becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.

(Emphases added). On April 29, 2011, the court entered judgment confirming the sale of Petitioners' residence. On May 10, 2011, the court issued an Order Denying Petitioners' motion to set aside defaults. The property was sold on May 12, 2011.

II.

On May 31, 2011, Petitioners appealed to the ICA. Petitioners' notice of appeal stated that they were appealing from the April 29, 2011 Order Confirming Sale, the April 29, 2011

---

[9] The full title of the order confirming sale is "Order Approving Report of Commissioner, Confirming Commissioner's Sale of Property at Public Sale, Directing Distribution of Proceeds, for Writ of Possession and for Disposal of Personal Property."

Judgment, and the April 29, 2011 writ of possession. Petitioners argued (1) that "Respondent's lack of standing was irrevocable," because Respondent did not have ownership of the underlying promissory note, (2) that "[HRCP] Rule 17(a) is not available to a plaintiff [i.e., Respondent] unless that plaintiff had standing to invoke the jurisdiction of the court in the first place," (3) "[HRCP] Rule 17(a)'s 'ratification provision' . . . cannot be taken advantage of by a purported real party in interest when there is no showing of 'honest and understandable mistake,'" and (4) the court "committed reversible error" in "finding that Chase was the holder of the Note and therefore the real party in interest."

The ICA affirmed the court's denial of the motion to set aside the entry of default judgment. As to Petitioners' first three arguments, the ICA noted that "the [] court acknowledged [Petitioners'] contention that Respondent lacked standing, but found that Chase addressed those concerns by ratification of the proceedings." Mortgage Electronic Registration Systems, Inc. v. Wise, No. CAAP-11-0000444, 2012 WL 5971062 at *1 (App. Nov. 29, 2012) (SDO). The ICA held that "the [] court properly allowed the ratification where such ratification was formal and did not prejudice the defendants." Id.

10

As to the fourth argument, the ICA stated that "Respondent submitted a copy of the Note as Exhibit A attached to their [sic] motion to confirm the sale," and "[t]he Sr. Lead Operations Specialist for Chase declared the Note to be a true and accurate copy of the Note in Chase's possession, satisfying Hawaiʻi Revised Statutes (HRS) § 490:3-205(b) . . . ." Id. The ICA concluded that "the [] court did not err in finding Chase to be the holder of the note where Chase bore the Note endorsed by [Flexpoint] to Washington Mutual Bank and the blank endorsement by Washington Mutual Bank establishes Chase as the holder of the Note." Id.

### III.

In their Application, Petitioners ask if the ICA erred by holding that Chase could ratify Respondent's standing,[10] because Chase could not demonstrate that it was the holder of the Mortgage and Note at the commencement of the suit and therefore could not establish that it was the real party in interest HRCP Rule 17(a). Petitioners contend (1) that "[HRCP] Rule 17(a) []

---

[10] In this jurisdiction, "[t]he crucial inquiry with regard to standing is whether the plaintiff has <u>alleged such a personal stake in the controversy as to warrant his or her invocation of the court's jurisdiction and to justify exercise of the court's remedial powers on his or her behalf.</u>" Kahoʻohanohano v. State, 114 Hawaiʻi 302, 318, 162 P.3d 696, 712 (2007) (internal quotation marks removed) (emphasis in original). "[I]n deciding whether the plaintiff has a requisite interest in the outcome of the litigation, we employ a three part test: (1) has the plaintiff suffered an actual or threatened injury as a result of the defendant's wrongful conduct; (2) is the injury fairly traceable to the defendant's actions; and (3) would a favorable decision likely provide relief for [the] plaintiff's injury." Id. (internal quotation marks removed).

is not available to ratify commencement of an action unless the ratifying party [i.e., Chase] had standing to invoke the jurisdiction of the court in the first place at the time the complaint was filed," and (2) "there is no evidence in the record to prove that Chase had suffered any injury at the time Respondent commenced this foreclosure action."

### IV.

In its Response, Respondent raises several arguments suggesting that Petitioners are procedurally barred from challenging Respondent's standing or Chase's ratification of Respondent's standing.  Respondent maintains, inter alia, (1) that the challenges made by Petitioners to Respondent's standing are inappropriate in an appeal from the Order Confirming Sale, and (2) that the challenges by Petitioners to Respondent's standing are barred by res judicata.  In their Reply, Petitioners maintain that they are not barred from challenging Respondent's standing because "[a] plaintiff's lack of standing may be disputed at any stage of a proceeding, even on appeal."[11]

### V.

### A.

Respondent's arguments are dispositive.  As to

---

[11]     Supplemental briefing was ordered on the issues of whether ratification pursuant to HRCP Rule 17(a) cures a defect in standing and whether the Mortgage and Note were self-authenticating pursuant to Hawaiʻi Rules of Evidence (HRE) Rule 902(9).

Respondent's first contention, this court has explained that a judgment of foreclosure "finally determines the merits of the controversy." MDG Supply, Inc. v. Diversified Investments, Inc., 51 Haw. 375, 380, 463 P.2d 525, 528 (1969) (internal citations omitted). Subsequent proceedings "are simply incidents to its enforcement." Id. (internal citations omitted.) Thus, "foreclosure cases are bifurcated into two separately appealable parts: (1) the decree of foreclosure and the order of sale, if the order of sale is incorporated within the decree, and (2) all other orders." Miller, 71 Haw. at 70, 783 P.2d at 858. It is evident that orders confirming sale are separately appealable from the decree of foreclosure, and therefore fall within the second part of the bifurcated proceedings. See id. (treating an appeal from an order confirming sale and for deficiency judgment as separate from an appeal from the foreclosure judgment); see also Eastern Savings Bank, FSB v. Esteban, 129 Hawaiʻi 154, 296 P.3d 1062 (2013) (treating an appeal from the judgment confirming the foreclosure sale as a separate matter from the judgment of foreclosure).

In Miller, the defendant did not appeal from the court's order granting summary judgment and a decree of foreclosure, but did appeal from an Order Confirming Commissioner's Sale of Property at Public Sale, Directing

13

Distribution of Proceeds, and for Deficiency Judgment. 71 Haw. at 67, 783 P.2d at 856. The defendants apparently challenged the plaintiff's right to seek a deficiency judgment. Id. at 70, 783 P.2d at 858.

This court held that the defendants "timely appeal from the Deficiency Judgments would entitle it to challenge errors unique to it, such as an erroneous upset price or miscalculation of deficiency." Id. at 71, 783 P.2d at 858 (emphasis added) (internal quotation marks removed); see also Independence Mortg. Trust v. Dolphin, Inc., 57 Haw. 554, 556, 560 P.2d 488, 490 (1977) (stating that "this court has jurisdiction to consider errors unique to those post-judgment orders which have been timely appealed"); Powers v. Ellis, 55 Haw. 414, 418, 520 P.2d 431, 434 (1974) (explaining that "to the extent that an order of sale merely implements matters contained in a decree of foreclosure, there is no need to take a separate appeal from it," but an appellate court can review the order of sale for "errors unique to it"). However, the plaintiff's "right to recover deficiency judgments was completely and finally adjudicated" by the court's order granting summary judgment on the foreclosure. Id. Therefore, this court held that "where an appellant challenges the right of a party to obtain a deficiency judgment in a foreclosure case, he must take his appeal in a timely

14

fashion from the order which finally determined the right to a deficiency," i.e., the order granting summary judgment. Id. Because the defendant's appeal was not from the deficiency judgment, the court dismissed the appeal for lack of appellate jurisdiction. Id. at 67, 783 P.2d at 856.

Similarly, in Citicorp Mortgage, Inc. v. Bartolome, 94 Hawaiʻi 422, 16 P.3d 827 (App. 2000), the plaintiffs appealed, inter alia, from the court's deficiency judgment, arguing that the defendant committed Truth in Lending Act (TILA) violations or unfair and deceptive practices. The ICA found that these issues were "defenses against [the plaintiff's] right to the foreclosure, to be properly brought in the trial court against [the plaintiff's] motion for summary judgment." Id. at 433, 16 P.3d at 838. Hence, those issues were "properly brought on appeal from the final judgment on that motion." Id. However, the plaintiffs "appealed instead from the [] deficiency judgment." Id. The ICA dismissed the appeal from the deficiency judgment because the plaintiffs "ma[de] no argument on appeal regarding the amount of the deficiency judgment," and thus "fail[ed] to raise any cognizable issues with respect to the deficiency judgment." Id. at 429 n.3, 16 P.3d at 835 n.3. (citing Miller, 71 Haw. at 71–72, 783 P.2d at 858).

B.

In the instant case, Petitioners have never legally

15

challenged the court's entry of the May 12, 2010 judgment of foreclosure made pursuant to the order granting Respondent's motion for summary judgment. As discussed supra, Petitioners' ultimate deadline to appeal that judgment was July 12, 2010. However, they did not appeal from that judgment. Hence, the May 12, 2010 judgment became final and binding. As stated before, the foreclosure judgment "determined the merits of the controversy," rendering subsequent proceedings "incident[] to its enforcement." MDG Supply, 51 Haw. at 380, 463 P.2d at 528.

The issue of whether or not Respondent had standing to bring suit is not "unique" to the confirmation of sale. Miller, 71 Haw. at 71, 783 P.2d at 858. A lack of standing could have been raised at any time. See Keahole Defense Coalition, Inc. v. Board of Land and Natural Resources, 110 Hawaiʻi 419, 427, 134 P.3d 585, 593 (2006) ("[S]tanding is a jurisdictional issue that may be addressed at any stage of a case.") As in Citicorp, Petitioner's lack of standing could have been brought as a defense to Respondent's motion for summary judgment. See Miller, 71 Haw. at 71, 783 P.2d at 858; see also MDG Supply, 51 Haw. at 380, 463 P.2d at 528.

Because the time for appealing the judgment of foreclosure passed without an appeal being taken, that judgment

16

became final and Respondent's right to foreclose was finally decided in its favor. As related, the court's foreclosure judgment entitled Respondent to foreclose on the mortgage, to have the property sold, and to a distribution of the proceeds. By virtue of the finality of the foreclosure judgment, Respondent was authorized to procure the sale of the property.

VI.

As to Respondent's second contention in this case, we observe that none of the foregoing cases involved an objection to standing. See Miller, 71 Haw. at 71, 783 P.2d at 858. However, we conclude that res judicata would preclude Petitioners from challenging Respondent's standing in their appeal from the order confirming sale, despite the general proposition that a lack of standing may be raised at any time. Under the doctrine of res judicata, challenges to Respondent's standing were subsumed under the foreclosure judgment, which had became final and binding.

A.

"Res judicata . . . limit[s] a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy." Esteban, 129 Hawaiʻi at 158, 296 P.3d at 1067. The doctrine prohibits parties from "relitigating a previously adjudicated cause of action." Id. at 159, 296 P.3d

17

at 1067 (quoting Bremer v. Weeks, 104 Hawai'i 43, 54, 85 P.3d 150, 161 (2004)).

As explained supra, foreclosure cases are bifurcated into two appealable parts. Due to their bifurcated nature, mortgage foreclosure proceedings may be treated as analogous to two separate proceedings for res judicata purposes.

Esteban is instructive in this regard. In Esteban, the defendants did not appeal the court's order foreclosing on their property. Id. at 155, 296 P.3d at 1063. However, prior to a hearing on the motion for confirmation of sale, the defendants filed TILA claims against the plaintiff in federal court, arguing that they were exercising their right to rescind their mortgage. Id. at 156, 296 P.3d at 1064. The defendants then submitted a brief opposing the confirmation of sale on the basis of their federal TILA claims against the plaintiff. Id.

This court held that, pursuant to Miller, the foreclosure judgment was a final judgment that allowed the plaintiff to assert the defense of res judicata. Id. at 160, 296 P.3d at 1069. Res judicata prevented the defendants from raising their TILA claims because the claims could have been raised as defenses in the foreclosure action, but were not. Id. at 160-61, 296 P.3d 1069-70. Thus, this court affirmed the court's judgment confirming the sale of the plaintiff's property. Id. at 161-62, 296 P.3d 1069-70.

18

Hence, in Esteban, this court held that, in the context of proceedings to confirm the sale of foreclosed property, the judgment of foreclosure has a preclusive effect. As in Esteban, in this case Petitioners raised a defense during the confirmation proceedings that was potentially subject to the res judicata effect of the foreclosure judgment.

B.

However, Respondent apparently did not raise the affirmative defense of res judicata against Petitioners' standing objection in the confirmation of sale proceedings. A res judicata defense is subject to waiver. State ex rel. Office of Consumer Protection v. Honolulu University of Arts, Sciences, and Humanities, 110 Hawaiʻi 504, 516, 135 P.3d 113, 125 (2006). ("In this case, Honolulu University did not plead res judicata as an affirmative defense in its answer nor did it raise the doctrine of res judicata during the circuit court proceedings. Consequently, Honolulu University has waived the affirmative defense of res judicata.")(emphasis added).

Nevertheless, "preclusion [i.e., res judicata] even can be raised by an appellate court for the first time on appeal." Wright and Miller, Federal Practice and Procedure § 4405; cf. Clements v. Airport Authority of Washoe County, 69 F.3d 321, 330 (9th Cir. 1995) (noting that because the court has "the ability

19

to overlook waiver and raise the res judicata issue sua sponte," "we [also] may do so with respect to issue preclusion"). Further, "just as the court of appeals can raise a res judicata defense on its own, it can entertain a party's [res judicata] argument" raised for the first time on appeal. Wright and Miller, Federal Practice and Procedure § 4405. This is because courts are concerned with "avoiding the burdens of relitigation" and "avoiding inconsistent decisions." Id. Consequently, "[t]he waiver principle need not sacrifice the judicial interests in enforcing res judicata principles." Id.

Although Respondent raised the issue of res judicata for the first time before this court, the "public interest" in "avoiding inconsistent results," see Clements, 69 F.3d at 330, is strong. By virtue of the foreclosure judgment Respondent already had the right to have Petitioners' property sold. A serious inconsistency would result if Respondent were held not to have the right to procure confirmation of the sale. Absent an objection unique to the sale of the property, such as a grossly inadequate sale price, see, e.g., Hoge v. Kane, 4 Haw. App. 533, 540, 670 P.2d 36, 40 (1983), a ruling abrogating the sale would "impair or destroy the rights" granted by the foreclosure judgment, since an adverse ruling could prevent Respondent from receiving the proceeds of the action. Sure-Snap Corp. v. State

Street Bank and Trust Co., 948 F.2d 869, 875 (2d Cir. 1991).

Therefore, in the limited circumstances of foreclosure

proceedings, we consider the merits of the res judicata defense,

even if impliedly waived.

                              C.

        As explained in Esteban, "res judicata precludes not

only the relitigation of claims or defenses that were litigated

in a previous lawsuit, but also of all claims and defenses that

might have been properly litigated, but were not litigated or

decided."  129 Hawai'i at 159, 296 P.3d at 1067.  Further, "[w]hen

a valid and final personal judgment is rendered in favor of the

plaintiff . . . [i]n an action upon the judgment, the defendant

cannot avail himself of defenses he might have interposed, or did

interpose, in the first action."  Id. (quoting Restatement

(Second) of Judgments § 18) (emphasis in original).

        "[T]he doctrine that a judgment creates its own cause

of action [i.e., an 'action upon the judgment'] is an entirely

practical legal device, the purpose of which is to facilitate the

goal of securing satisfaction of the original cause of action."[12]

---

[12]     To reiterate, "foreclosure cases are bifurcated into two
separately appealable parts: (1) the decree of foreclosure and the order of
sale, if the order of sale is incorporated within the decree, and (2) all
other orders."  Miller, 71 Haw. at 70, 783 P.2d at 858.  As discussed infra,
by filing a motion for confirmation of sale, Respondent may be understood to
have in effect filed a separate action upon the judgment in a foreclosure
action.

21

National Union Fire Ins. Co. of Pittsburgh v. Owenby, 42 Fed. Appx. 59, 63 (9th Cir. 2002) (emphasis added). Traditionally, an action upon a judgment was an action to secure enforcement of an out of state judgment. See id. (citing Restatement(Second) of Judgments § 18 cmt. f). However, courts have held that other actions similar to such proceedings also qualify as an action on the judgment for the purposes of res judicata. See In re Wright, 194 B.R. 715, 718 n.6 (Bankr. D. Conn. 1996) (Wright II).

For example, in Wright, the plaintiff brought a "dischargability action" to have a debt declared to be non-dischargable in a pending bankruptcy case. In re Wright, 187 B.R. 826, 828 (Bankr. D. Conn. 1995) (Wright I). The original debt was the result of a district court action against the plaintiff. Id. at 829. In response to a motion for reconsideration, Wright I explained that the "dischargability action" was the "same claim" as the prior district court action. Wright II, 194 B.R. at 718. The federal bankruptcy court further stated that characterization of the action as an action on the judgment was appropriate, because "both seek to preserve the creditor's ability to execute upon the prior judgment." Id. at 718 n.6. Therefore, Wright I noted that "the Defendant would appear to be precluded under principles of res judicata from presently offering any defenses which were available to him in the District Court Action." Id.

22

Proceedings to confirm the sale of a foreclosed property are similar to a traditional "action upon the judgment," inasmuch as both are proceedings to "facilitate the goal of securing satisfaction of the original cause of action." See Owenby, 42 Fed. Appx. at 63. This court has explained that, "[a] judgment of foreclosure of mortgage or other lien and sale of foreclosed property is final, although it contains a direction to commissioners to make a report of sale and to bring the proceeds into court for an order regarding their disposition." MDG Supply, 51 Haw. at 379, 463 P.2d at 528 (citations omitted). "Subsequent proceedings" are treated as incidental to enforcement of the foreclosure judgment. Id. Thus, as in a traditional action upon the judgment, confirmation of the commissioner's sale serves to facilitate the satisfaction of the original judgment. Hence, a proceeding for confirmation of sale is analogous to an "action on the judgment." See Wright II, 194 B.R. at 718 n.6.

As stated previously, in an action on the judgment a defendant is barred by res judicata from availing himself of "defenses he might have interposed, or did interpose, in the first action." Restatement (Second) of Judgments § 18. Petitioners raised Respondent's alleged lack of standing as a defense to the foreclosure proceeding, but did not appeal from the foreclosure judgment, which became final. In view of the

functional similarity between the confirmation of sale proceeding and an action on the judgment, we conclude that Petitioners cannot again raise the standing objection previously asserted in the foreclosure proceeding in the subsequent confirmation of sale proceedings.[13]  Id.  This promotes the finality of the foreclosure judgment and prevents inconsistent results between the foreclosure judgment and the order confirming sale or other similar proceedings.[14]

VII.

For the foregoing reasons, the April 29, 2011 judgment

---

[13]    Contrary to Petitioners' contention, it has been held that "the doctrine of res judicata has application to questions of jurisdiction as well as other issues and it ordinarily precludes a subsequent challenge to a finding that jurisdiction does exist."  Cutler v. Hayes, 818 F.2d 879, 888 (D.C. Cir. 1987) (internal citations omitted) (holding that "[s]tanding ranks amongst those questions of jurisdiction . . . whose disposition . . . may preclude, or collaterally estop, relitigation of the precise issues of jurisdiction adjudicated").

[14]    In its Opening Brief before the ICA, Petitioners contended that their challenges to Respondent's standing could also be raised as a part of their appeal from the court's Order Denying Petitioners' Motion to Set Aside Entry of Defaults.  However, this court has explained that "a motion to set aside a default entry or a default judgment may and should be granted whenever the court finds (1) that the nondefaulting party will not be prejudiced by the reopening, (2) that the defaulting party has a meritorious defense, and (3) that the default was not the result of inexcusable neglect or a wilful act."  BDM, Inc. v. Sageco, Inc., 57 Haw. 73, 76, 549 P.2d 1147, 1150 (1976).
        Petitioners have raised no cognizable argument regarding prongs (1) or (3) of Sageco.  Hence, Petitioners' contentions regarding the court's Order Denying Petitioners' Motion to Set Aside Entry of Defaults are not addressed further.  Cf. Aames Funding Corp v. Mores, 107 Hawaiʻi 95, 105 n.10, 110 P.3d 1042, 1052 n.10 (2005) ("Because the Moreses do not provide any discernible legal argument as to their contention that the court had no subject matter jurisdiction because the Moreses did not receive the requisite copies of the TILA 'Notice of Right to Cancel,' we do not address this contention further.").

of the court and the January 2, 2013 judgment of the ICA are affirmed, but for the reasons set forth herein.[15]

| | |
|---|---|
| Gary Victor Dubin, Frederick J. Arensmeyer, and Zeina Jafar, for petitioners | /s/ Paula A. Nakayama |
| | /s/ Simeon R. Acoba, Jr. |
| | /s/ Sabrina S. McKenna |
| David B. Rosen, and David McAllister, for respondent | /s/ Richard W. Pollack |
| | /s/ Rhonda A. Nishimura |



---

[15] Therefore, we do not decide the merits of Petitioners' appeal regarding Respondent's standing, Chase's ratification, and Chase's status as the real party in interest under HRCP Rule 17.